## VERLAND OIL & GAS CO. v. WALKER.

No. 13456—Opinion Filed Sept. 16, 1924.

**1. Oil and Gas — Negligent Operation of Well—Pollution of Stream Negligence Per Se.**

Under section 7969, Comp. Stat. 1921, it was negligence as matter of law for defendant to permit oil and salt water from its wells to flow into a stream used for watering stock, since the other elements of actionable negligence were present. Said statute imposes a duty on all persons, under the police power of the state, not so to pollute any stream.

**2. Appeal and Error—Disposition of Cause—Damages—Remittitur.**

Record examined, and held the judgment

is excessive in the sum of $400, as not supported by competent evidence, and remittitur ordered accordingly.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Osage County; Chas. B. Wilson, Jr., Judge.

Action by E. C. Walker against Verland Oil & Gas Company for damages. Judgment for plaintiff. Defendant appeals. Affirmed on condition.

F. E. Riddle and G. C. Spillers, for plaintiff in error.

E. E. Grinstead, E. F. Scott, A. M. Widdows, and Frank T. McCoy, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court. Plaintiff Walker was in the possession of, and occupying but not under valid lease, about 2,000 acres of Indian grass land in the Osage Nation on which he ranged about 300 steers. Defendant oil company drilled one producing well and was in process of drilling another under a valid lease for such purpose on the same real estate. Elm creek was near such producing well. During a portion of the year the water flowed in such creek and the remainder of the year it stood in holes from which the plaintiff's cattle were watered. Plaintiff had judgment against defendant for $3,100 on verdict, for the death of ten and for injury to 60 cattle, alleged to have been caused by their drinking the water in such creek impregnated with oil and salt water from said well of defendant. The errors assigned by defendant, though variously argued, will appear in disposing of its several contentions.

1. Section 6526, Comp. Stat. 1921, provides that deleterious matters—naming them, and including crude oil—shall not be deposited, placed, or thrown into any of the streams, lakes, or ponds of this state, and constitutes the doing of same a crime.

Section 7969, Id. is:

"Disposition of Water From Wells: No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

We deem it unnecessary to refer to the regulations of the Department of the Interior governing this subject. Said statutes come clearly within the police power of the state. Protection of the purity of the streams and lakes for the preservation of the life, health, and happiness of the people, as well as animal life, is the public policy of the state. There is ample evidence, under the well known rule as to conflicting evidence, to support the verdict of the jury, that the defendant permitted oil and salt water to escape from its well and flow into Elm Creek from its slush pits, though some thereof may have come from other wells as contended. Defendant contends that since plaintiff had no valid lease, he was a quasi trespasser on the land, to whom defendant owed no duty other than to avoid wantonly injuring his cattle, and that that degree of negligence was not proved. As stated in the first paragraph in the syllabus in Spencer et al. v. Bolt, 82 Okla. 280, 200 Pac. 187, a violation of a statute or ordinance, specifically imposed under the police power of the state, is negligence per se or as a matter of law, if the other elements of actionable negligence exist. Oklahoma Producing & Refining Corp. of Am. v. Freeling, 88 Okla. 166, 212 Pac. 742. On account of polluting the stream so as aforesaid, defendant can hardly be heard to question the validity of plaintiff's grazing rights in the land if, in fact, such pollution caused the damages. Defendant owed the duty to the whole world, including plaintiff, not to pollute the stream.

2. There is no competent evidence of damage for the item of transferring these cattle to another pasture. Plaintiff's testimony tends to show that 60 of his cattle were damaged $35 per head by drinking the polluted water. While the testimony is not very satisfactory on this item, under the proper measure of damages, it stands in the record without objection from defendant at the trial. We are constrained to hold that this testimony supports the judgment to the amount of $2,100 for damages to the cattle that did not die. The testimony as to the cattle that died from drinking the polluted water is even less satisfactory. If the evidence of his different witnesses as to the steers found dead could be construed as meaning that many different steers, then the testimony supports his claim for ten. However, the burden was upon plaintiff to show the exact number of cattle that died from drinking the polluted water and their reasonable market value. He testified, in substance, that the reasonable market value of the herd was $100 per head, and this testimony was not challenged at the trial.

We are unable to identify the dead cattle referred to by other witnesses as other than the six identified by plaintiff. We conclude that there is positive and competent proof of the death of only six. Allowing this item at the full price per head, we find the evidence supports damages in the sum of only $2,700. and that the judgment is excessive to the amount of $400.

If a remittitur is filed for all in excess of $2,700 and interest thereon from date of original judgment, within 15 days from receipt of the mandate by the trial court, the judgment as thus corrected will be affirmed; otherwise, the judgment will be reversed and a new trial granted.

By the Court: It is so ordered.