## KANOLA CORPORATION et al. v. PALMER et al.

No. 21764.    Feb. 6, 1934.

Rehearing Denied March 6, 1934.

Alvin Richards, F. A. Calvert, McCrory & Monk, and John Alsop, for plaintiffs in error.

Leon C. Phillips, for defendants in error.

RILEY, C. J. This is an action commenced by defendants in error against Kanola Corporation and the Pure Oil Company, plaintiffs in error, to recover damages alleged to have been caused by the pollution of the stock water supply in a large pasture containing some four sections of land of which plaintiffs were the lessees, except as to 160 acres thereof which they owned in fee. The action was against defendants jointly, and the pollution was alleged to have been caused by casting salt water upon the surface of the land which poisoned certain cattle belonging to plaintiffs and being pastured on said lands.

It was alleged, and it was stipulated at the trial, that defendants were owners of separate oil and gas leases covering 80 acres, each lying within said large pasture. Plaintiffs further alleged that defendants jointly constructed a dam across the natural drainage from their leases, and thereby emptied salt water and other refuse of their respective leases into the water on the land owned and leased by plaintiffs, thus polluting the stock water supply, by which plaintiffs' cattle were poisoned, causing the death of some of them and injury to others, all to the damage of plaintiffs in the sum of $950. Defendant Kanola Oil Company answered by general denial. Defendant Pure Oil Company answered by general denial, and also alleged that it had been operating its lease and producing oil therefrom for a long period of time, and that it had operated same in a diligent, careful, and skillful manner, and had taken all the pre-

cautions common to the oil industry to prevent the discharge of oil, salt water, and other refuse upon the surface of the land and had operated its lease in the best known, modern, approved methods and had not been guilty of negligence, carelessness, and had not violated any law.

The cause was tried to a jury, resulting in a judgment for plaintiffs against both defendants in the sum of $775, and defendants appeal.

At the trial, plaintiffs wholly failed to prove their allegations that defendants had jointly constructed a dam against the natural drainage on their leases, and thereby cast the salt water upon plaintiffs' land. It appears that the lease of the Pure Oil Company was on the west half of the N. E. ¼, and the Kanola lease on the east half of the N. E. ¼ of section 26, and the pasture in which plaintiffs' cattle grazed included all of section 26, together with sections 23, 24, and 25.

The well or wells from which salt water was produced by the Kanola Corporation were so situated that such water could be drained either to the north or to the southwest. Originally the drainage had been to the north, but some years prior to 1929, that being the year the damage claimed for was alleged to have been sustained, the Kanola Company had changed its drainage to the southwest in order to prevent salt water from flowing into the watershed of the Okmulgee municipal water supply. The drainage from the Pure Oil Company well had always been to the southwest. The drainage from the wells of the two defendant companies, after the change by the Kanola Company, was down and along separate draws or depressions, one running southwest from the Kanola well and one running south and a little west from the Pure Oil Company well, a distance of a little over one-fourth of a mile, where they converged, forming a common draw or drain on the northwest quarter of section 26. This common draw in turn drains into a larger draw running southeast across the southwest quarter of section 26, and out of the pasture.

It is first contended that because of these separate and distinct draws or drains, and because of the absence of positive evidence showing that any of the cattle drank salt water from the drains below where they came together, the joint judgment cannot be sustained. In support of this contention, defendants assert that there is no evidence disclosing defendants jointly contributed to the loss complained of by plaintiffs. It is true that there is no direct evidence that any of plaintiffs' cattle drank water from the "common draw," that is, from the draw or drain below where the separate drains from defendants' well converged. There is no direct evidence that more than one of plaintiffs' cattle was ever seen drinking from either of the separate drains leading from said wells.

In Tidal Oil Co. v. Pease, 153 Okla. 137, 5 P. (2d) 389, it is held:

"To make tort-feasors jointly liable there must be some sort of community in the wrongdoing, and the injury must be in some way due to their joint work, but it is not necessary that they be acting together or in concert if their concurring wrongful acts occasion the injury.

"Where two defendants, acting independently, wrongfully pollute two separate streams of water flowing through a tract of land owned by plaintiff and used by him for pasturing live stock by casting salt water in the streams, the one defendant polluting one stream and the other defendant polluting the other stream, and the action is for injury to the live stock from drinking salt water from both streams, defendants are jointly liable for such injury."

In that case there was positive evidence that some of plaintiff's cattle were seen drinking from both streams. There was no joining of the two streams so as to form a common supply of polluted water. It is urged in this case that the court erred in refusing to direct a verdict for defendants because of the absence of the evidence to show community of action by defendants. It is well settled that a demurrer to the evidence of plaintiff, or a motion for a directed verdict, presents the question of whether, admitting the truth of all the evidence which has been given in favor of the party against whom the demurrer or motion is directed, together with such inferences and conclusions as may be reasonably drawn from it, there is enough evidence to reasonably sustain a verdict should the jury find in accordance therewith. If so, the demurrer or motion, as the case may be, should be denied. Great Southern Life Insurance Co. v. Long, 93 Okla. 129, 219 P. 926; Ginner & Miller Publishing Co. v. N. S. Sherman Machine & Iron Works, 93 Okla. 221, 220 1 650.

Applying this rule and considering all the inferences and conclusions that the jury was justified in drawing from the evidence, there was no error in overruling the demurrer to plaintiffs' evidence, nor was there error in denying a directed verdict in their favor.

The record discloses that defendants had obtained their oil and gas leases directly or by mesne conveyances or assignments from the owner of the land in fee, and that the original lessors were separate owners of the two 80-acre tracts covered by defendants' oil and gas leases, and that the defendants or their assignor acquired their separate leases some nine years before the alleged damage claimed for was sustained by plaintiffs, and that the owner of the land had thereafter given agricultural or grazing leases covering the same land to a firm known as Wilson & Sons, who had like leases on all the other lands embraced within the large pasture except 160 acres owned by the plaintiffs, and that the plaintiffs were sublessees of Wilson & Sons.

It is contended that under the rule announced in Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906, plaintiffs cannot recover because of the interest of the owner of the fee in the production of oil and gas by defendants. That case is not in point. There the owner of the fee sued two oil companies operating leases on land other than that owned by the plaintiffs, who, it was shown, jointly with plaintiffs or lessee, cast salt water in and upon plaintiffs' land. It was there held that they could not recover for the reason that his own tenant, with his consent, participated in the pollution, and that there was no evidence by which the damage done by plaintiffs or lessee, who was not sued, could be separated from that caused by the defendants. Here the action is not by the owner of the land, but is by a sublessee of the land under a separate agricultural or grazing lease. The evidence in this case shows that the salt water and oil was by each defendant piped into a tank where the salt water was separated from the oil, and the salt water was then piped through a two-inch pipe into a pool or earthen tank which was fenced. It was from these earthen pools or tanks that the salt water escaped. These pools or earthen tanks constructed on the leases of the separate defendants were only a short distance from the west line of their leases. The salt water flowed over and across the land of the adjoining owner. The salt water from the Kanola lease ran but a short distance west, where it crossed a line onto the land covered by the Pure Oil Company lease, and across that lease one-fourth of a mile and onto the land owned by C. W. Wilson, where it joined with the salt water which was permitted to escape from the Pure Oil Company's well. The salt water from the Pure Oil Company's well ran but a short distance on the land embraced within its lease, and thence onto the premises of Wilson, being the northwest quarter of section 26. The owner of that land had no connection whatever with the ownership of the land covered by the oil and gas company leases of the defendants.

The evidence is that the jury could infer that the only place or places where salt water accumulated in sufficient quantities that cattle could drink same was on this land owned by C. W. Wilson, or on the quarter section south thereof, owned by a different party. Clearly, then, under the evidence, defendants violated the provisions of section 7969, C. O. S. 1921, in allowing salt water from their wells to flow over the surface of this land. There is clear distinction between this case and that of Walters v. Prairie Oil & Gas Co., supra.

It is next contended that plaintiffs are not entitled to recover for the reason that they, knowing of the presence of salt water in the pasture, deliberately rented same and put their cattle therein.

The evidence does not sustain this contention. Mr. Standley, one of the plaintiffs, and the one who had charge of and managed the cattle, testified that he learned of the salt water in the pasture long after he leased the same and put the cattle therein; the defendants promised to take care of it, but failed to do so. Plaintiffs turned their cattle into the pasture about April 1, 1929. There is no evidence that they knew of the salt water at that time and there is no evidence that salt water was escaping from the pools at that time. The injury did not occur until June or July of that year. Plaintiffs had a right to assume that defendants would comply with the provisions of section 7969, supra.

Defendants at the trial contended and sought to show that the injury to plaintiffs' cattle was not caused by their drinking salt water, but was from other causes, such as fighting, accidental injury, and a disease referred to as "blackleg."

It is also contended that the jury violated certain instructions given by the court to the effect that before the jury could render a verdict against the Kanola Corporation, either separately or jointly with the other defendant, the jury should find and believe from a preponderance of the evidence that the injury, if any, was contributed to by such animal or animals drinking salt water permitted to escape from the premises of the Kanola Corporation. A like instruction was

given as to the Pure Oil Company. On this question the jury was entitled to take into consideration all the facts and circumstances shown by the evidence and base their verdict on the evidence as a whole, together with such inferences and conclusions as might be reasonably drawn therefrom. In this case there was evidence from which the jury could reasonably infer and conclude that the injury to plaintiffs' cattle was contributed to by both the defendants, and for this reason there was no violation of the instructions given.

The judgment is affirmed.

SWINDALL, McNEILL, BAYLESS, and WELCH, JJ., concur.