## INDIAN TERRITORY ILLUMINATING OIL CO. et al. v. GRAHAM et al.

No. 24664.   June 18, 1935.

Rehearing Denied Nov. 5, 1935.

W. P. McGinnis, Hamilton & Howard, Archibald Bonds, Fred M. Carter, M. D. Kirk, F. V. Phipps, and Jack Paden, for plaintiffs in error.

McCoy, Craig & Pearson, for defendants in error.

PER CURIAM. The plaintiffs herein sued the defendants to recover damages alleged to have been caused by the pollution of the stock water supply in a pasture containing approximately 320 acres used for grazing purposes for the cattle of the plaintiffs. Plaintiffs alleged that defendants in their oil and gas mining operations caused or permitted oil, salt water, and other deleterious substances to escape and flow into a creek used as the water supply for the cattle of the plaintiffs, and as a result of drinking the polluted water some of the cattle died and others were injured; that the cattle constituted a dairy herd and their milk supply was decreased to such an extent that plaintiffs ultimately were compelled to abandon their dairy business. The defendants, answering, after general denial, admitted their joint mining operations; alleged that their operations were carried on under a departmental lease, subject to the rules and regulations of the Secretary of the Interior, and alleged that plaintiffs had failed to comply with such rules and regulations in giving notice of their alleged damage within the prescribed period; they pleaded that compliance with such rules and regulations constituted a condition precedent to the right of recovery, and say that the failure of the plaintiffs to comply therewith operated as a bar against the prosecution of the suit. Defendants denied that they had polluted the fresh water supply used for the cattle of plaintiffs and denied that the cattle had received injuries by drinking from the creek alleged to be polluted; alleged that defendants had constructed a fence to protect the cattle from drinking the water; alleged that plaintiffs knew at the time they released their cattle in the pasture, they would have access to the stream into which drainage from defendants' lease flowed, and that they could have, for a small sum of money, built a fence and prevented their cattle from drinking the water in said stream and avoided the resulting damage. Plaintiffs replied by general denial. Trial of the cause was had and a verdict returned for the plaintiffs against the defendant oil companies and judgment thereon entered in the sum of $4,000. Under instructions of the court the jury returned a verdict in favor of defendants N. E. Wooley and J. B. Darby, employees of the defendant oil companies. The defendant oil companies appeal from the judgment rendered. The defendants do not discuss their 21 assignments of error separately, but group them under the following propositions:

(1) Misconduct of counsel for plaintiffs in the examination of a witness.

(2) Error in overruling motion of the defendants for judgment notwithstanding the verdict under the rule of respondeat superior.

(3) Error in the instructions of the court.

(4) The admission of incompetent testimony.

(5) Failure of plaintiffs to comply with the acts of Congress and the rules and regulations promulgated by the Secretary of Interior as a condition precedent to the right of recovery.

We will discuss the errors assigned in the order of presentation in the brief of the defendants, as above outlined.

After lengthy testimony had been given by W. H. Graham, Jr., one of the plaintiffs in the cause, detailing practically all of the facts upon which recovery was sought, plaintiffs introduced W. H. Graham, Sr., as a witness. After the usual preliminary questions were propounded, this witness was asked whether he had heard all of the testimony which had theretofore been given by his son, W. H. Graham, Jr. Upon an affirmative answer, counsel for plaintiffs inquired as to whether or not all of the testimony given by W. H. Graham, Jr., was substantially correct and whether the witness would give the same answers as his son if asked the several questions which had been propounded to W. H. Graham, Jr. Defendants objected to this manner of interrogating the witness, which objection was sustained by the court. The attorney for plaintiffs restated the question and the court again sustained an objection thereto. When plaintiffs' counsel again asked the question and an objection was made the court overruled the objection. Whereupon counsel for defendants asked leave to present their argument on the objections in the absence of the jury. The court excused the jury, and after considerable argument as to the form of the question and the procedure to be followed the court again sustained the objection of the defendants to the question. The witness was then excused. It would have been better practice for plaintiffs' counsel to have desisted from his efforts to introduce the testimony in the manner disclosed by the record and to have submitted to the ruling of the court, saving his exceptions; however, the court promptly sustained objections to the questions asked, excluded the jury during the argument, and thereafter sustained defendants' position. There is nothing in the record to disclose that the attorney for plaintiffs was acting in bad faith or maliciously. He was perhaps too persistent in repeating the question which the court had excluded. An examination of the record does not disclose that prejudicial error resulted from the conduct of counsel for plaintiffs. Even where incompetent testimony is introduced, if the court strikes the same from the record, unless it is apparent that prejudice resulted, the court will not reverse the cause. Letcher v. Skiver, 99 Okla. 269, 269 P. 1029. The record does not disclose such prejudice or error as to warrant a reversal of the case on this proposition.

Employees of the defendant oil companies were made parties defendant by the plaintiffs. The verdict of the jury under instructions of the court was in favor of these employees. Defendants, in their motion notwithstanding the verdict, urge that under the rule of respondeat superior, the court should have granted a judgment in favor of the oil companies, since the finding of the jury in favor of these employees negatived any negligence charged in the petition against the oil companies. If the liability in this action was predicated solely upon the negligent acts of these employees and there were no other allegations of negligence of the master, then the position of the defendants would be correct. We find from an examination of the petition that plaintiffs did not rely solely upon the negligent acts of the two employees, who were exonerated by the verdict of the jury, but alleged generally that the defendants were guilty of negligence. The court, in the case of Texas Company v. Alred, 167 Okla. 128, 28 P. (2d) 556, in passing upon an identical question, said in the first paragraph of the syllabus:

"The maxim of 'respondeat superior' has no application to a petition charging negligence attributable to the master and its servants, where the petition also charges the master with negligence in permitting salt water to escape from its storage tank and thus polluting a stream in which plaintiff's cattle were injured, since the duty of preventing the salt water from escaping from the master's premises was a nondelegable duty."

Defendants complain of errors in the instructions given by the trial court. It is contended that instruction No. 4 invades the province of the jury in assuming as a fact that the draw which it was alleged the defendants polluted was the fresh water supply for plaintiffs' cattle. Defendants offered testimony intended to show that this draw was not the source of fresh water for the plaintiffs' cattle. It is said that there was a conflict of testimony on this issue. Defendants assert that the court should have conditioned the language used in the instruction upon a finding by the jury that the draw into which the salt water and other deleterious substances escaped was the fresh water supply for plaintiffs' cattle, and, that the instruction not being so premised was erroneous. When that portion of the instruction complained of, cited in the brief

of defendants, is read in connection with its context, it appears that the court did not invade the province of the jury by this instruction. The court said, "And in this case if you find from a preponderance of the evidence, facts and circumstances in proof that the defendants, in the operation of their oil mining lease, permitted salt water or other deleterious substances to escape therefrom and to flow over the surface of the earth into the draw which was the fresh water supply of plaintiffs' cattle," thereby clearly charging the jury that the question of whether or not the draw was the fresh water supply for the cattle depended upon their finding of such fact by a preponderance of the evidence.

Instruction No. 7 of which the defendants complain reads as follows:

"You are instructed that as a matter of law, the plaintiffs herein would not be chargeable with notice that defendants were permitting salt water and other deleterious substances to escape from their oil mining operations, since it is a violation of the law of the state to permit salt water or other deleterious substances to escape from oil mining operations and flow over the surface of the earth into fresh water streams from which cattle are likely to drink, or to be permitted to stand in pools exposed to live stock which might likely drink therefrom and the plaintiffs had the right to presume that the defendants would not violate the law."

The complaint against this instruction urged by defendants is that the language used is in direct conflict with instructions Nos. 5 and 6, which, in substance, advised the jury that if the plaintiffs knew, or by the exercise of reasonable diligence could have known, of the pollution of the pasture stream before they turned their cattle therein, and could have constructed a fence to protect against the resulting damage to their cattle, then the recovery of the plaintiffs would be limited to the cost of building a protecting fence to prevent their cattle from drinking of the impregnated water, and further, that it was the duty of the plaintiffs to exercise ordinary care and diligence and to expend such sum of money as an ordinarily prudent person would expend in order to reduce and minimize their damage. As we read instruction No. 7, the court was not dealing with the question of actual notice, or with the exercise of ordinary care by plaintiffs to ascertain the true facts as to the pollution of the stream. Instruction No. 7 was given to advise the jury that plaintiffs were not charged with notice and knowledge of the pollution of the stream as

a matter of law. Under the law it was the duty of the defendants to observe and comply with section 11580, Okla. Stats. 1931, in the disposition of the waste and refuse from their mining operations. It was the duty of the court to instruct on the legal obligation imposed upon the defendants in this regard. Hines v. Dean, 96 Okla. 107, 220 P. 860; Vanderslice v. Davis, 119 Okla. 87, 248 P. 585; Magnolia Petroleum Co. v. Witcher, 141 Okla. 175, 284 P. 297. Plaintiffs had a right to assume that defendants would comply with the provisions of the above statute. Kanola Corporation et al. v. Palmer, 167 Okla. 430, 30 P. (2d) 189.

Defendants complain of the instructions given by the court on the measure of damages. Without analyzing these instructions it is sufficient to say that they fairly and reasonably lay down the admeasurement by which the jury was advised to consider the resulting damages. Plaintiffs sued for the value of certain cattle which died and the injury resulting in depreciation in the market value of others. Added damages were asked for loss of profits from the operation of the dairy business of plaintiffs and the total loss of their dairy. A recovery of $20,535 was asked. Judgment was rendered for $4,000. The testimony of the value of the cattle which died and the injuries resulting to the others, irrespective of any loss of profits or ultimate loss of the dairy business, supports an amount in excess of the recovery. Defendants did not request or submit any additional instructions on the measure of damages. Applicable to this question is the opinion of our court in Allen v. Cubbison, 150 Okla. 116, 3 P. (2d) 677, where the fourth paragraph of the syllabus reads as follows:

"It is well settled by this court that where there is competent evidence to show damages alleged and the verdict is not excessive, and when the complaining party does not request an instruction correctly stating the measure of damages, the cause will not be reversed because the measure of damages is inaccurately stated in the instruction."

Complaint is made of the introduction of testimony to show that some of the cattle which died or were injured by the negligence of the defendants had been entered for prizes at the Osage County Free Fair, and that they had received in their classification blue ribbons as premium live stock. The record does not disclose error in the admission of this testimony. This proof reflected one element for consideration in fixing the market value of the cattle. Evi-

442

dence as to pedigree and records of registered animals are matters to be considered by the jury in determining their value. Union Traction Co. v. Anderson (Tenn.) 25 A. L. R. 1496. An examination of the record does not disclose that there was error in the admission of this proof. Our court has held that admission of incompetent evidence will not cause a reversal unless there probably resulted a miscarriage of justice or the substantial violation of a constitutional right or duty. Mutual Life & Accident Ass'n v. Moore, 162 Okla. 260, 20 P. (2) 168.

The defendants contend that section 2 of the Act of Congress of March 3, 1921 (41 Stat. L. 1249), as amended by the Act of Congress of March 2, 1929 (45 Stat. L. 1478), and the rules and regulations of the Secretary of Interior promulgated pursuant to such acts of Congress, control and regulate the right of plaintiffs to recover in this action. Defendants argue that compliance with such acts and regulations is a condition precedent to the right of suit, and plaintiffs having failed to meet the requirements cannot maintain this action. The acts of Congress relied upon make provision for compensation to "the bona fide owner or lessee of the surface of the land" under rules and regulations prescribed by the Secretary of Interior. The regulations require notice within ten days after discovery of any damages to be served by any aggrieved party. The amended act of Congress makes "arbitration, or a bona fide offer in writing to arbitrate," a condition precedent to the right to sue for damages. The applicability of section 2 of the Act of Congress (March 3, 1921) to the right of recovery of damages for injuries to cattle under facts similar to those presented by the record here, was involved in the case of Midland Oil Co. v. Ball, 115 Okla. 229, 242 P. 161. Speaking to the question presented, the court said:

"It is the contention of the defendant that, under the terms of the lease, acts of Congress, and the regulations of Secretary of the Interior for the development and operation of oil mining leases in the Osage Reservation, no recovery can be had by one in control of the surface for injuries suffered by the escape of oil and salt water from any wells except in the manner there provided; that the regulations provide for arbitration; and that no arbitration has been had or been asked by the plaintiff.

"We think this contention may be dismissed with the statement that no provision appears to have been made in the lease, or regulations of the Secretary, for settling claims against the lessee for damages occasioned by the escape of salt water or base sediment, on the lands other than with the surface owners or their lessees, or for damages other than to the surface of the land itself. It is conceded that there is no specific provision for the settlement of damages to live stock in the circumstances of this case. Plaintiff is not shown to be either the owner or lessee of the surface. He rests his right of action upon the peaceable and undisturbed possession for more than three years. One of the defendant's complaints is that no allegation is made, or proof offered, that the plaintiff was the owner, or a lessee of the owner, of the surface. As contended by defendant, and established by a long line of decisions unnecessary to cite, Congress has plenary power in dealing with the affairs of the unemancipated Osage Tribe of Indians; but it is not made to appear by any act of Congress called to our attention, or by the decision of any court, or by the regulations of the Secretary of the Interior, that it was the purpose of Congress or the intention of the Secretary of the Interior, by any regulation adopted for leasing the land of the Osage Tribe of Indians, for other than the owner of the surface, or his lessee, to submit his cause of action against an oil or gas mining lessee for a tort to arbitration, or to settlement by the Department of the Interior."

Thereafter our court, in the case of Devonian Oil Co. et al. v. Smith, 124 Okla. 71, 254 P. 14, in approving the holding in the Midland Oil Co. Case, supra, held that control of the federal government did not extend to violations of section 11580, Okla. Stats. 1931, in mining operations. The court used the following language in the opinion:

"It is contended that section 7969 has no application to any operations in Osage county, for the reason that oil operations in that county are within the exclusive control of the federal government, and that the federal government, through the Secretary of the Interior, is actively exercising such control. It is conceded, however, that this court held to the contrary in the case of Midland Oil Co. v. Ball, supra. It is therefore not necessary to again pass upon that question."

The amended act (March 2, 1929) did not enlarge the character of damage claims subject to its provisions. The amendment broadened the prior act by providing for arbitration. There is no language in the amendment which makes inapplicable the law announced in the above cases and applied to the construction of the original Act of Congress of March 3, 1921. These cases being decisive of the question presented, the

443

trial court correctly refused to require plaintiffs as a condition for recovery to show compliance with the acts of Congress or departmental regulations.

Having considered all of the errors assigned, and each being decided adversely to defendants, the judgment is affirmed and judgment rendered against Independence Indemnity Company, surety on the supersedeas bond.

The Supreme Court acknowledges the aid of Attorneys Forrester Brewster, C. A. Ambrister, and J. A. Anderson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Brewster and approved by Mr. Ambrister and Mr. Anderson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.