## MID-CONTINENT PETROLEUM CORP. v. POAGE.

No. 29325.   Dec. 17, 1940.

Rehearing Denied April 15, 1941.

*112 P. 2d 166.*

Park Wyatt, of Shawnee, and J. C. Denton, R. H. Wills, J. H. Crocker, J. P. Greve, and I. L. Lockewitz, all of Tulsa, for plaintiff in error.

William M. Cutlip, of Shawnee, for defendant in error.

NEFF, J.   Defendant appeals from a judgment in favor of plaintiff in an action to recover for the loss of cattle alleged to have been caused by their drinking of polluted water. Plaintiff was the owner of a certain leasehold estate and lived thereon for approximately seven years. A stream called Briar creek traversed premises adjoining plaintiff's leasehold estate. Plaintiff testified that defendant permitted oil, salt water and other deleterious substances to escape into the waters of Briar creek and that from time to time waters of Briar creek overflowed upon plaintiff's premises and collected in a lake or slough upon said premises. Plaintiff testified he had water in this lake or slough, aside from the yearly flood waters, from three to six times each year. Said lake or slough constituted a source of supply of stock water for the plaintiff. The testimony further showed that the slough dried up in 1934, and that the water which injured plaintiff's cattle came in the spring, summer, and fall of 1935. Plaintiff admitted that the water had killed the pecan trees prior to 1934, and that he had known it was polluted since 1934, in which year his son had lost a cow from drinking it.

The defendant contends that plaintiff was a tenant from year to year, and that since he knew the water had been polluted for six or seven years prior to the time involved herein, and had voluntarily exposed his cattle to such polluted water with that knowledge, the trial court erred in overruling its demurrer to plaintiff's evidence and in refusing to direct a verdict for defendant.

The evidence showed plaintiff first rented this land in 1931, under an oral contract, for a period of one year. He had remained on the premises since that date without making a new lease. Defendant says that holding over does not continue the old, but creates a new lease each year. It may be conceded that this repeatedly created a new tenancy from year to year.

In presenting that portion of the above proposition wherein the contention is

made that knowingly permitting his cattle to remain in the pasture necessitates the conclusion that said act or omission was in itself the proximate cause of the damage, defendant cites City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462, to the effect that where a person of general intelligence knows or reasonably ought to know the facts, he is presumed to comprehend and appreciate the dangers incident thereto. Defendant also cites Kanola Corporation et al. v. Palmer, 167 Okla. 430, 30 P. 2d 189, and Indian Ter. Ill. Oil Co. v. Graham, 174 Okla. 438, 50 P. 2d 720. In both cases contentions similar to those in the present case were advanced. However, in the Kanola Case the contention was rejected on the ground the evidence did not sustain the argument that plaintiffs knew of the presence of salt water in the pasture, and that they had deliberately placed their cattle therein with knowledge of the condition. In the Graham Case there was no evidence that plaintiff knew the water was polluted.

In answer to this argument the plaintiff urges that the defendant has merely invoked the doctrine of contributory negligence, and that the verdict of the jury in plaintiff's favor was a finding that he was not, by his own conduct, guilty of contributory negligence. It is our opinion that the argument concerning proximate cause is not applicable in the instant case, and for this reason it is unnecessary to consider either the question made thereon, or the answering contention of the plaintiff based upon the rule of contributory negligence.

Under section 11580, O. S. 1931, 52 Okla. St. Ann. § 296, as construed by this court, the allowing of salt water from wells to flow into streams used for watering stock is negligence as a matter of law. Verland Oil & Gas Co. v. Walker, 100 Okla. 258, 229 P. 235; Owens-Osage Oil & Gas Co. v. Long, 104 Okla. 242, 231 P. 296; Devonian Oil Co. v. Smith, 124 Okla. 71, 254 P. 14. And in such a case the plaintiff has the right to assume that defendant will comply with the statute. Indian Ter. Ill. Oil Co. v. Graham, 174 Okla. 438, 50 P. 2d 720; Texas Co. v. Mosshamer, 175 Okla. 202, 51 P. 2d 757; Magnolia Petroleum Co. v. Ford, 183 Okla. 14, 79 P. 2d 588.

In the last-cited case the contention was made that the negligence of the defendant oil company, if any, was not the proximate cause of the injury. Plaintiff had constructed a building in or near a stream bed. During a flood the premises were overflowed and damaged, both by the high water and by oil which escaped from defendant's operations and flowed over plaintiff's property. It was the defendant's theory that plaintiff had failed to make adequate provision to divert the water which actually overflowed his premises, and that most of the damage would have resulted from the flood water in any event, and not from the pollutive substances in the water.

In denying the defendant's contention it was said:

"Whatever shortsightedness the plaintiff may have shown in establishing his home and place of business where he did, and regardless of the inevitability of his injury from an overflow, nevertheless, he would not be damaged by pollutive substances from defendant's lease unless defendant permitted them to escape. Defendant's negligence was a present, concurrent factor. That the rain or improper arrangements or bad location likewise were present and concurred is not a complete defense under this record."

The reasoning in the above-quoted passage is equally applicable to the matter now before us. To hold otherwise would be tantamount to holding that when plaintiff has reason to believe the overflow water might reach him, he is required to fence against it for his own protection, or surrender his land entirely, since knowing of the possibility of overflow water from the polluted stream, he would be bound by such knowledge and thereby forced to bear the damage or make provisions against their occurrence, even at the risk of having to remove entirely from the land in order to save himself.

628

Defendant's second contention is that the trial court erred in refusing to admit certain evidence offered by defendant. At the trial defendant offered the testimony of one Neddeau, whose land was situated one and one-half miles to the south of plaintiff's land, and was traversed by Briar creek, the stream which overflowed plaintiff's land. Neddeau's cattle had access to the waters of Briar creek, and he testified that cattle would not drink polluted water if they had fresh water to drink. Defendant then sought to show by this witness that the witness's cattle had access to the waters of Briar creek during 1935, that they had access also to flood waters from the creek, and that he did not lose any cattle. The trial judge sustained the objection to this testimony on the ground that the fact that Neddeau's cattle "had access" to such water had no bearing on the case, unless a showing was made that they drank the same water. These same cattle also had access to fresh water.

We are of the opinion that the sustaining of plaintiff's objection to this testimony was correct. The offered testimony of this witness fell short of placing his own cattle in a position comparable to the position of plaintiff's cattle. The testimony was not that they drank the same water plaintiff's cattle did, but that they had access to the flood waters of Briar creek, and that none of his cattle died. Under the witness's own testimony his cattle probably did not drink the creek water, since they had access to fresh water.

It is our opinion that the offered testimony was not the proper manner in which to show that plaintiff's cattle did not, or could not, have died from drinking this polluted water.

The judgment is affirmed.

BAYLESS, C. J., and RILEY, OSBORN, and CORN, JJ., concur.