The OHIO OIL COMPANY, a corporation,
Appellant,

v.

Ralph ELLIOTT and Ella Elliott,
Appellees.

No. 5716.

United States Court of Appeals
Tenth Circuit.

April 28, 1958.

Judson S. Woodruff, Tulsa, Okl. (Howard H. Harris, Tulsa, Okl., was with him on the brief), for appellant.

Allan D. Sasser, Lawton, Okl. (Lawton Burton and Russell G. Jones, Lawton, Okl., were with him on the brief), for appellees.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

Appellant seeks relief from a judgment entered upon a verdict favoring appellees, plaintiffs below, for damages to livestock allegedly caused by the tortious salt water pollution of McCardio Creek in Caddo County, Oklahoma. The jury's award allowed $5,000 for cattle which died and $2,000 for cattle which were injured as the result of drinking the tainted water. Appellant contends the evidence to be insufficient to warrant submission to the jury of the issues of negligence and proximate cause and asserts further error in the amount of allowable damages. Each of these questions patently requires an appellate court to review, with care and in detail, the entire record. If this is to be done with understanding the printed page must reflect in the original words of the witness or in supplemental but accurate explanation by counsel the clear purport of the testimony. References by a witness to points "here" and "there" upon a map, though perfectly clear to one watching the witness, become meaningless in cold print. Considerable and important portions of the instant record are concerned with directions and distances and leave much to be desired from the standpoint of clarity. In such instances we can but presume that the testimony was understandable to the jury and was found by them to lend support to their verdict.

Appellant Ohio Oil Company is the operator of an oil and gas lease upon lands located within the drainage area of McCardio Creek. In conjunction with its oil production, Ohio, during the times pertinent to this controversy, had constructed and maintained upon its leasehold salt water disposal pits, the banks of which bordered upon a small draw or gully known as Dry Branch. This gully in turn, at a point considerably below the Ohio leasehold, fed into McCardio Creek. Appellees ran their cattle upon lands riparian to McCardio Creek some distance downstream from the junction of Dry Branch with McCardio Creek.

In September, 1954, prior to the time the Elliott cattle grazed the McCardio Creek area, the witness Turnbill received a complaint that salt was being released into the creek. The witness, an Oklahoma Game Ranger, investigated in accordance with his duty to preserve the habitat of fish under state protection and upon confirmation of the presence of salt in the creek sought to trace the source of contamination. He found the surface of the ground between the Ohio salt dis-

834

posal pits and Dry Branch bed was damp or, where dry, covered with "whitey spots." At this point there was no water flowing in Dry Branch but the ground showed some dampness to a point where a rock ledge in the creek would create a short cascade during the time the water was flowing. From under this rock or "drop-off" water percolated or seeped down Dry Branch toward the McCardio, forming a pool of salty water just below the ledge. Not more than one hundred feet from this standing pool were located the wells of a company not involved in this litigation. Other companies also were disposing of salt water in the immediate area.

Turnbill observed the condition of the ground around the other wells and concluded for his purposes that the trouble began on the Ohio lease. A cautious witness, he stated that he felt he did not have enough evidence to file a criminal complaint, but he did speak to an employee of the Ohio Oil Company about correcting the situation.

In February, 1955, Turnbill received a call from the Elliotts stating that there was salt in McCardio Creek. He again investigated and found the same conditions as described except that water was now flowing in a small amount in Dry Branch above the rock ledge. He again spoke to an employee of the Ohio Company. Some time after this the salt pits were filled in with dirt and they no longer exist. The witness expressed the opinion that the salt present in McCardio Creek was properly attributable to the release of salt water from the Ohio lease.

Other witnesses testified in similar substance noting that the ground below the Ohio pits "was white with salt on top and further down it was damp and soggy."

■ The mandate of Oklahoma statutory law, 52 O.S.A. § 296, makes it unlawful to allow salt water to flow over the surface of the land and dispels the necessity of proving particular acts of negligence. Devonian Oil Co. v. Smith, 124 Okl. 71, 254 P. 14. Liability per se follows for damages occasioned by the contamination of a fresh water stream through the release of salt water into such stream. Indian Territory Illuminating Oil Co. v. Graham, 174 Okl. 438, 50 P.2d 720; Verland Oil & Gas Co. v. Walker, 100 Okl. 258, 229 P. 235; Owen-Osage Oil & Gas Co. v. Long, 104 Okl. 242, 231 P. 296; Mid-Continent Petroleum Corp. v. Poage, 188 Okl. 626, 112 P.2d 166. Although in the instant case no one actually saw salt water flowing over the surface of the Ohio property the question of whether or not a statutory violation in that regard has occurred may be submitted upon circumstantial evidence. Cf. Phillips Petroleum Co. v. Sheel, 208 Okl. 416, 256 P.2d 815. The evidence here is far from conclusive to show a statutory violation, but the trier of the fact was convinced by it and found accordingly. See McCasland v. Burton, Okl., 292 P.2d 396, and Rock Island Oil and Refining Company v. Hutchinson, 208 Okl. 259, 255 P.2d 234, where in cases presenting similar difficulties of proof in salt poisoning cases, the Oklahoma Supreme Court held that the facts may be proved by circumstantial as well as by positive or direct evidence and it is not necessary that the proof rise to that degree of certainty which will exclude every other reasonable conclusion than the one arrived at by the jury. We believe the evidence sufficient to preclude error in the submission of the issue of negligence to the jury.

■ Although appellant produced considerable evidence that the Elliott cattle deteriorated and died from causes other than salt poisoning the effort created only a conflict in the evidence. A chemical quantitative analysis of the salt content of McCardio Creek showed the presence of salt in lethal quantities upon occasion and appellees' veterinarian diagnosed the cause of the sickness and death of the cattle to be salt poisoning. In such case the issue of proximate cause was properly submitted to the jury.

■■ According to the testimony of the appellee Ralph Elliott he suffered a loss of 83 cows, 19 heifers and one bull

as a result of their deaths from drinking the waters of McCardio Creek. The jury's award of $5,000 for that element of damage is well within the allowable limits of the testimony relating to value. An additional 130 were rendered sick. In regard to these animals the parties stipulated that "all of Plaintiffs' cattle which survived the period material to this controversy ultimately recovered to normal condition and remained in Plaintiffs' ownership and possession until such recoveries were effected." For damage done to these cattle the jury awarded $2,000, although no proof was introduced showing expenditures necessary to return them to their former condition of health or any pecuniary loss resulting from a diminution in production of milk. Plaintiffs insisted in the trial court that alternative methods of calculation of damages were available to them and chose to rely on the rule announced in Sun Oil Co. v. Hoke, 197 Okl. 261, 169 P.2d 753, and Deep Rock Oil Corporation v. Griffeth, 177 Okl. 208, 58 P.2d 323:

> "Where cattle are damaged and depreciated in value as a result of drinking water from a polluted stream, the measure of damages is the difference between the reasonable market value of said cattle immediately prior to and subsequent to the injury."

Plaintiffs testified to the value of the animals prior to the time they drank the salt water and further testified that they depreciated in value 20 to 30 per cent.

It is to be noted that in Sun Oil Co. v. Hoke, supra, the court considered and rejected the defendant's contention that the loss should be measured by the amount necessary to compensate plaintiff for the time and labor expended in effecting a cure together with the loss of the use or produce of the animal during the period of disability. However, it is apparent in that case that some permanent damage was claimed. This case is contrasted with the more recent case of Wilcox Oil Company v. Walters, Okl., 284 P.2d 726, wherein the court repeats the rule of the previous cases, but emphasizes the burden upon plaintiff to show a basis upon which the jury may calculate *financial detriment*. Allowing $100 for one of a group of cows where the difference between the reasonable market value immediately prior to and subsequent to the injury was shown, the court states that this amount appeared as *permanent damage* to the animal but reversed the judgment as based upon an excessive verdict where other damages including loss of income, special feeds and veterinary fees did not add up to the amount awarded. It does not appear whether evidence of market value before and after the injury was introduced as to the other cattle.

Ordinarily, the cost of restoring personal property to its former condition and depreciation in value should approximate each other in terms of money values. In the instant case, however, it is not shown that the animals required special care nor that a market was sought or lost during the time of their diminished value. For all that appears from the record, the cattle recovered within a short period of time on an ordinary diet with no pecuniary loss to the appellees. Under such circumstances, an award based upon the condition of the animals before and after the injury would be tantamount to an award for the pain and suffering of the cattle, which of course is not an element of damage in a personal property tort suit.

The philosophy of the law is to fully and fairly compensate an injured person for his losses, not to place him in a better position than he would have held had it not been for the injury. For this reason, a distinction is recognized in the measure of damages to be applied to determine compensation between a temporary and a permanent injury. Where a temporary injury is inflicted damages to the owner are measured by his loss of use of the property during the time necessary to repair it plus cost of repair, whereas permanent damage requires the application of the rule of depreciation. Viewed in the clarifying

light of the discussion of the two rules in Mid-Continent Petrcleum Corporation v. Fisher, 183 Okl. 638, 84 P.2d 22, there is no conflict between the cases of Sun Oil Co. v. Hoke, supra, and Wilcox Oil Company v. Walters, supra, nor between the Oklahoma law of damages and the general rule. The factual situation evokes the proper rule.

The parties here have agreed that the injury to surviving animals was temporary. No award can be made on the theory of permanent damages. There was no showing of loss occurring by reason of the temporary disability of the cattle and therefore the portion of the award concerning these animals cannot be sustained.

Other contentions advanced by appellant have been considered and are without merit.

The judgment is modified by striking therefrom the sum of $2,000 awarded in error for injured cattle and as so reduced the judgment is affirmed.