## MISSOURI, K. & T. R. CO. v. ROSE.

No. 7111—Opinion Filed Oct. 24, 1916.

(160 Pac. 734.)

**Railroads—Construction and Maintenance—Injuries to Animals—Liability.**

Where a railway company has notice that "arsenic dip"—a poisonous fluid in appearance resembling water—is escaping from one of its tank cars to the ground, and collecting in a pool on its right of way, accessible to domestic animals running at large, and fails to exercise ordinary care to keep such animals away from such pool, held to constitute negligence and that the company is liable for injury resulting to animals from drinking out of such pool.

(Syllabus by Galbraith, C.)

Error from County Court, Osage County; Paul B. Mason, Judge.

Action by J. W. Rose against the Missouri, Kansas & Texas Railway Company. From a judgment for plaintiff, defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Wilberforce Jones, for defendant in error.

Opinion by GALBRAITH, C. This appeal is from a judgment rendered upon the verdict of a jury in favor of J. W. Rose, the defendant in error, for $50 and interest, in an action for damages arising from the loss of one Jersey milch cow, charged to have been

killed by the carelessness and negligence of the railway company. The facts briefly stated are as follows: Mr. Rose was a resident of the unincorporated town of Prue, Osage county, Okla., and owned one Jersey milch cow that was accustomed, with other village cows, during the daytime, to run at large upon the commons of that community. The plaintiff in error operated a railroad through the village of Prue, and upon its station ground established and maintained stock pens, and as a part of the equipment of the pens was a dipping vat for treating cattle afflicted with the Texas Fever Tick. On the 14th day of April, 1913, the railway company placed a tank car filled with "prepared dip," or "arsenic dip," on its switch near the stock pens and in close proximity to the dipping vat. A rubber hose was attached to the tank and extended across to the vat, and in that way the dip was intended to be transferred from the car to the vat. In some way, not disclosed by the evidence, the hose became detached or the tank struck a leak, and the dip escaped to the ground, and running across the main track into an excavation along the right of way formed a pool. A citizen of the village discovered this leak early in the morning about 7 o'clock, and advised the agent of the railroad company of the fact, and that some two or three barrels of fluid had run out upon the ground. The agent, thinking that it was a water tank that was leaking, paid no attention to this notice, and again along in the afternoon of the same day the defendant in error discovered that the tank was leaking and telephoned the agent, and also went to the station and advised him, and they went to the tank car together, and the agent attempted to stop the leak, but was unable to do so. The agent then telegraphed the company's live stock department to send a man to stop the leak. This man came the following day. On this 14th day of April the Rose cow was out upon the commons as usual. When she came in at night it was discovered that she was ill, and the next morning she was dead. Rose then made an attempt to discover the cause of death, and went down to the tank car and found the pool of dip that had formed on the right of way, and saw cow tracks leading to the pool and across it, and recognized tracks made by his cow. He then caused a post mortem to be had upon the body of the cow, and a portion of the contents of the stomach were removed and sealed and sent to the chemical department of the State University for analysis. The returns from the analysis showed the presence of arsenic poison sufficient to cause the death of an animal. It also appeared from the evidence that the agent of the railroad company knew that the plaintiff's cow and the cows of other residents of the village were at large upon the commons, and he saw them around the tank car on this day. The dip in the tank car had been diluted with water in the usual proportions— 20 to 1—and was ready for use, and it resembled water in appearance.

It is contended on the part of the railway company that the cow was a trespasser upon its right of way, and that it was liable only for wanton injury inflicted upon her. That neither the pleadings nor the evidence would justify a conclusion that the injury in this case was the result of a wanton or willful act. The argument offered in support of this conclusion is shown by the following short excerpts from the brief:

"There is neither pleading nor proof in this case that the herd law had been suspended at the time and place of the accident, and under the repeated decisions of this court the herd law must be presumed to have been in full force and effect, and the cow was therefore unlawfully at large."

Also:

"In view of the fact that the cow was unlawfully at large, she was a trespasser upon the tracks of the defendant railway company, and if this had been a suit for the negligent operation of defendant's train, the rule governing it would be that the employes of the defendant, in operation of its train, would have owed no duty whatever with respect to the cow except to use ordinary care to prevent injury to her after they had actually discovered her presence and peril upon the track."

The contention that the cow was unlawfully at large and therefore a trespasser upon the company's right of way is presumed from the fact that there was no proof in the record that Osage county had been released from the operation of the herd law and is based upon the decision of this court in St. L. & S. F. R. Co. v. Brown, 32 Okla. 483, 122 Pac. 136. That decision, however, became final on March 12, 1912. On March 25, 1913 (being chapter 94 of the Session Laws of 1913), the Legislature passed an act regulating the running at large of domestic animals, etc., the first section of which reads in part:

"The board of county commissioners of any county in this state, where domestic animals were not restrained from running at large at the time of the adoption of the Constitution of this state, are hereby authorized to exempt their county or any stock district thereof from the provisions of sections 1 and 2, art. 1, s. 1, Session Laws of 1903, as to any one or all classes of domestic animals mentioned herein," etc.

In this condition of the law we are not sure that a presumption would arise from the mere absence of proof in the record that the herd law was in force in Osage county, in April, 1913. The testimony to the effect that it had always been the custom for the cows to run at large in that community is not contradicted. In any event we do not think that this case should be determined upon presumptions, since there is no necessity for doing so. The action was instituted on the theory that the liability of the company was based upon its negligence, and the cause was tried in the county court upon that theory. The court in its instructions to the jury clearly submitted the cause on that theory in instruction No. 2 as follows:

"You are instructed that if you believe from a preponderance of the evidence that the defendant had a car in its yards in the town of Prague, Okla., containing a liquid substance that was of a poisonous character and likely to cause death to animals or stock drinking the same, then it would be the duty of the defendant to exercise ordinary care in preventing the escape of such substance; and if you further find that the defendant failed to exercise such care, and by reason thereof such substance escaped from such car, and that the cows of plaintiff's drank from such liquid so escaping, and from the effects thereof died, then the defendant would be liable if it failed to exercise reasonable care in guarding such substance from the cows of plaintiffs, after it had notice they were in the vicinity thereof."

Even upon the contention of the plaintiff in error that the cow was a trespasser upon its right of way the liability of the company would be established under the rule announced in the Brown Case, supra, wherein the court said:

"This court has refused to follow the rule announced in Texas and other states, making the company liable for only wanton and willful negligence, where the animal killed was unlawfully running at large, and it would be inconsistent with the statute restraining animals from running at large to require a lookout to be kept where animals could be at large only unlawfully; and we believe the correct rule to be that a railway company is required to exercise only ordinary care to avoid injuring trespassing animals after they are discovered on or in dangerous proximity to the track."

The evidence clearly shows that notice was brought to the railway company early in the morning of the 14th that this tank car was leaking, and that a second notice was brought to the agent in the afternoon of that day, and that he then attempted to stop the leak, and that the company did not send a man around to stop the leak until the following day; that the agent knew on this day that this plaintiff's cow, with others, was running at large on the commons, and saw them around this tank car during the day of the 14th.

The evidence does not disclose that this "arsenic dip" had an odor, offensive or otherwise, but it does show that it resembled water. The section foreman, when he saw it escaping from the tank, thought it was water. He was deceived by its appearance, and the cow may have been likewise deceived, and thus led to drink it. The company is bound to have known the dangerous character of this dip. When, with this knowledge, this poisonous fluid was permitted to escape from the tank and accumulated in a pool accessible to the cow, and no steps were taken to prevent her from drinking it, the company failed to discharge the duty it owed her, even though she was, as contended by the plaintiff in error, a trespasser, viz: "to exercise only ordinary care to avoid injuring her." Whether the company exercised ordinary care to prevent injury to the cow after the discovery of her peril was a question for the jury, and their finding was that it did not, and there is evidence to support this finding.

There are other errors assigned, but none of them seem to be well taken. There is evidence to support the finding of the jury that the company was negligent, and that this negligence was the proximate cause of the injury sustained by the defendant in error.

The judgment appealed from is therefore affirmed.

By the Court: It is so ordered.