MID-CONTINENT PETROLEUM CORP. et al. v. RHODES.

No. 34164.   Oct. 2, 1951.

Rehearing Denied Oct. 23, 1951.

Application for Leave to File Second Petition for Rehearing Denied Jan. 22, 1952.

*240 P. 2d 95.*

R. H. Wills, J. H. Crocker, J. P. Greve, J. H. Woodard, Oscar E. Swan, Jr., and Ben Hatcher, Tulsa, for plaintiffs in error.

Frank T. McCoy, John T. Craig, and John R. Pearson, Pawhuska, for defendant in error.

WELCH, J. J. E. Rhodes brought this action against Mid-Continent Petroleum Corporation, a corporation, Summit Drilling Corporation, a corporation, and E. F. Patrick, seeking damages for injuries to his cattle.

The plaintiff alleged injuries to his cattle resulting from their drinking of salt water and deleterious and poisonous substances wrongfully left open and exposed to plaintiff's cattle by the defendants; that defendants' acts resulting in said injuries were in violation of statutes; 21 O. S. 1941 §1197 and 52 O. S. 1941 §296. The defendants filed answer in general denial of all charges made by the plaintiff.

The plaintiff was the owner of an agricultural lease covering a large tract of land (Osage Indian land), and plaintiff's cattle were being grazed upon the land when the defendants entered the premises and conducted drilling operations under and in accord with the terms of an oil mining lease executed by the Osage Tribe of Indians and approved by the Secretary of the Interior. Some of the plaintiff's cattle entered upon the grounds of the drilling site and partook of the substances contained in a slush pit maintained by the defendants in connection with their operations, and said cattle on entry onto the grounds of the drilling site were exposed to machinery oil droppings and spilled deisel fuel and cottonseed hulls and other substances shown in evidence to exist about the grounds of the drilling site. Near the close of the drilling operation some of the plaintiff's cattle died and some of his cattle took on an appearance of drawn skin and ruffled hair and continued in such appearance, and thereafter failed to make gains in weight and fatness as other cattle maintained on equal pasturage and care.

Witnesses, who testified to experience in handling cattle in oil fields, gave testimony that plaintiff's cattle as had died, and plaintiff's cattle as had appearance of drawn skin and ruffled hair and subnormal weight, had symptoms common to cattle as had partaken of salt water and pollutions from oil drilling operations. Such witnesses and others gave testimony concerning the market value of such animals and normal animals and there was testimony

concerning the market value of the cattle as had died.

The jury found for the plaintiff and fixed a certain amount that he should have and recover from defendants. Judgment was entered in accord with the verdict.

Defendants contend the trial court erred in overruling defendants' demurrer to. plaintiff's evidence and defendants' motion for directed verdict.

Long prior to the date plaintiff acquired his lease of the land for pasturage purposes, and before defendants had acquired their oil mining lease, the oil rights in the land were reserved to the Osage Tribe of Indians by Act of Congress. The plaintiff held his lease subject always to the exclusive right of the Osage Tribe or its assigns to explore for and to produce oil. Defendants, as holders of an oil mining lease from the Osages, owned an estate in the land for purpose of exploring for oil and possessed exclusive right to use so much of the leased premises as was reasonably necessary in the operation of drilling for oil. (The lease in its terms provided that location-site for drilling a well should not exceed 1 ½ acres of surface land, and in fact defendants' operations were confined to an area of less than 1 ½ acres.)

The plaintiff's cattle entering upon the location-site of the drilling well, and upon the premises in use by the defendants as was reasonably necessary in their operation in drilling for oil, were in law trespassers. Pure Oil Co. v. Gear, 183 Okla. 489, 83 P. 2d 389.

Herein there was no evidence that defendants maintained slush pits or machinery or kept or left foreign substances in an area beyond what was reasonably necessary to their drilling operation, or that defendants used premises and maintained their operations otherwise than in usual and customary manner consistent with the purposes contemplated by the oil mining lease.

In the Pure Oil Co. case, supra, in the syllabus, said the court:

"1. Under the ordinary oil and gas lease, the lessee in developing the premises in the production of oil and gas is entitled to the possession and use of all that part of the leased premises reasonably necessary in producing and saving the oil and gas, including space to construct tanks and ponds, in which to confine salt water and other waste matter coming from the wells, and also including the space necessary to transport such waste matter from the wells into such tanks or ponds in a reasonably prudent manner.

"2. The provisions of section 11580, O.S. 1931 (52 Okla. St. Ann. §296), that 'salt water shall not be allowed to flow over the surface of the land,' means that the lessee shall not permit salt water to 'escape' from its confinement and flow over the surface of the land in the plain and ordinary meaning of the term.

"3. Where an oil and gas lessee permits salt water to flow through an open ditch two feet wide for a distance of 75 feet from the well to a receiving pond and does not permit the salt water to escape therefrom, such act does not constitute a violation of section 11580, O. S. 1931 (52 Okla. St. Ann. §296), providing that 'salt water shall not be allowed to flow over the surface of the land.'

"4. Where the oil and gas lessee constructs a ditch for the purpose of transporting salt water to a receiving pond, and such ditch was constructed in a reasonably prudent manner under the circumstances, such lessee has the exclusive right to the possession· of the space required for the construction of said ditch, and the cattle belonging to a subsequent agricultural lessee of the same premises, in drinking from the ditch, are trespassers.

"5. The duty of a landowner with respect to trespassing cattle is to not intentionally, willfully, or wantonly injure them, and after the discovery of their peril, to use reasonable care.

"6. Salt water and other deleterious substances incident to the operation of an oil and gas lease are not poisonous compounds within the meaning of sec-

tion 2440, O. S. 1931 (21 Okla. St. Ann. Sec. 1197), so as to require the landowner to properly safeguard such refuse by fencing or otherwise as against trespassing animals.

"7. A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled, unless the evidence and all the inferences which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff. But, where, from the facts shown by the evidence, reasonable men cannot draw different conclusions, and the evidence fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant."

The statutory construction and general rules above stated are here applicable. Herein, there was no evidence that defendants allowed salt water to "escape" from a confinement and beyond the drilling site and "to flow over the surface of the land" as would constitute a violation of 52 O. S. 1941 §296, nor was there any evidence that defendants laid out poisons as to be guilty of a misdemeanor within the meaning of 21 O. S. 1941 §1197. There was no evidence that defendants intentionally, willfully or wantonly injured any of plaintiff's cattle, or violated any duty with respect to said cattle, trespassers on premises in the rightful use and possessions of the defendants.

It is suggested by plaintiff that defendants were shown guilty of negligence under the doctrine of negligence after discovered peril, in that defendants well knew that the cattle were in the pasture and took no precaution to prevent their injury.

Missouri, K. & T. Ry. Co. v. Rose, 61 Okla. 156, 160 P. 734, is cited as being a case of analogous situation wherein the doctrine was applied. In the Missouri, K. & T. Ry. Co. case, it is held:

"Where a railway company has notice that 'arsenic dip'—a poisonous fluid in appearance resembling water—is escaping from one of its tank cars to the ground, and collecting in a pool on its right of way, accessible to domestic animals running at large, and fails to exercise ordinary care to keep such animals away from such pool, held to constitute negligence and that the company is liable for injury resulting to animals from drinking out of such pool."

Herein, there was evidence of injury to plaintiff's cattle from partaking of substances found on the premises in possession of the defendants, and, although it be said that defendants were bound to know the nature of the substance on its premises, and that injury might result to cattle partaking thereof, there was no duty in respect to trespassing cattle unless defendants knew of the presence of cattle on their premises, or had reason to believe that such cattle would be present upon their premises where the injurious substances were kept. "Discovered perils" import more than a mere possibility that a perilous condition might arise. In the M. K. & T. case the agents of the railroad saw the cattle running at large and on the right of way and at the place the railroad company had permitted the leaking poison to collect in open pools. Herein the plaintiff testified that he was present with and looking after his cattle daily and discussed with defendants the question of fencing. The mere fact that defendants saw the cattle on the grazing lands surrounding the scene of their operations does not raise an inference of after discovered peril, and especially in the circumstances that plaintiff was in charge of the animals.

In this case, sounding in tort and with an absence of any evidence of violation of statute resulting in injury, and with an absence of any evidence tending to establish negligence, the rule as announced in quoted paragraph 7 above must be here applied. Accordingly, the judgment herein is reversed.

HALLEY, V. C. J., and CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. GIBSON and O'NEAL, JJ., concur in result.

## On Rehearing.

On rehearing it is argued by defendant in error that the opinion erroneously fails to recognize that an oil and gas lease in Osage county is not an "ordinary oil and gas lease."

The oil and gas lease under consideration is a regular departmental lease executed by the Chief of the Osage Tribe of Indians, as lessor, under and in pursuance of section 3, of the Act approved June 28, 1906 (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249), the Act of March 2, 1929 (45 Stat. L. 1478), and the Act approved June 24, 1938 (52 Stat. L. 1034), and contains the following provision:

"During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tanksite, all damages to growing crops, or any improvements on the lands and all other damages as may be occasioned by reason of operations."

Defendant in error argues that the judgment should be affirmed because of the damages proven and by reason of the wording above referred to.

This court has determined on several occasions that the applicable Act of Congress and the regulations of the Secretary of the Interior have no application to a claim arising for damages to cattle occasioned by cattle drinking polluted oil and salt water from wells in Osage county under a lease containing the provisions as are embodied in the present oil and gas lease. Indian Territory Illuminating Oil Co. v. Carter, 177 Okla. 1, 57 P. 2d 864; Indian Territory Illuminating Oil Co. v. Graham, 174 Okla. 438, 50 P. 2d 720; Devonian Oil Co. v. Smith, 124 Okla. 71, 254 P. 14; Galt-Brown Co. et al. v. Lay, 183 Okla. 87, 80 P. 2d 567.

Our previous holdings are to the effect that the provision under discussion applies to damages to the surface only (including crop damages) and has no application to damages to livestock.