PHILLIPS PETROLEUM CO. v. SHEEL.

No. 34935. April 23, 1952.

*243 P. 2d 726.*

Rayburn L. Foster, Harry D. Turner, and D. E. Hodges, Bartlesville, and Cecil C. Hamilton, Oklahoma City, for plaintiff in error.

Frank T. McCoy, John T. Craig, and John R. Pearson, Pawhuska, for defendant in error.

PER CURIAM. This action was brought by plaintiff, George Sheel, the owner of 160 acres of land in Osage county, against Phillips Petroleum Company, operator of an oil and gas lease on the property, to recover damages for the death of three head of cattle belonging to plaintiff. The cattle were killed by the pump jacks with which defendant operated its wells. The trial court denied defendant's motion for a directed verdict and submitted the cause to a jury, which returned a verdict for plaintiff. Defendant appeals.

The sole question presented is whether, under the provisions of the oil and gas lease held by defendant, and the rules and regulations governing the operation of such leases, promulgated by the Secretary of the Interior, plaintiff was entitled to recover for the death of the cattle without proving any negligence on the part of defendant. The trial court instructed the jury that under the oil and gas mining lease and the rules and regulations of the Department of the Interior governing oil mining operations in Osage county, the oil lessee was liable to the surface owner for damages occasioned by its oil operations, if the jury found that said operations were the proximate cause of the damages complained of, thus, in effect, instructing the jury to return a verdict for plaintiff, if the death of his cattle was due to the oil operations of defendant, regardless of the negligence or lack of negligence on the part of defendant in conducting such operations.

The oil and gas lease under which defendant operated was made in 1925, by the Osage Tribe of Indians, upon a form prescribed by the Secretary of the Interior. It was approved by the Secretary. As to damages resulting from operations, in so far as is pertinent to this case, it provided as follows:

"During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tanksites, all damages to any growing crops or any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him."

Plaintiff acquired title to the land long after the defendant had drilled its wells thereon and, at the time he purchased, the wells on the lease were

being operated by pump jacks, which were the same or of identical form with those used by defendant at the time the cattle were killed in 1949. Plaintiff purchased the land in 1933, but his cattle suffered no injury from the operations of the defendant prior to 1949.

The regulations promulgated by the Secretary of the Interior covering the operation of oil and gas leases, provided as follows:

"No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior, or such operations specifically authorized by him.

"32. Approved oil and gas leases provide in part:

·"During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tanksite, all damages to any growing crops, or any improvements on the lands and all other damages as may be occasioned by reason of operations."

Then followed the other provisions contained in the preceding quotation from the lease.

They further provided for written notice of damages to be served upon the oil and gas lessee or the party in charge of the lease and in connection with said notice contained the following provision:

"It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the ninety-day period allowed by section 2 of the act of March 2, 1929, but it is intended to provide for an early examination of the property damaged by all parties interested to the end that the best possible evidence, much of which due to the nature of the damages or the property damaged, will be gradually obliterated and completely lost with the passage of time, be preserved for the board of arbitration or the court in event of failure of the parties to settle the claim by arbitration."

The regulations also provide that on receipt of complaint from a surface owner, the Superintendent of the Osage Agency may require the oil lessee to inclose slush pits, earthen tanks and reservoirs for salt water and other refuse within a fence. The oil and gas lease expressly provides that it is subject to regulations now or hereafter prescribed by the Secretary of the Interior, all which are made a part of the lease.

It was the contention of defendant in the court below, and it contends in this court, that that portion of the lease and regulations providing for payment by the oil lessee of "all other damages as may be occasioned by reason of operations" was intended to apply only to damages in the nature of those specifically set forth in the lease and regulations immediately preceding such provisions, and that it was not the intent of the Secretary of the Interior, in promulgating either the lease or the regulations, that damages to cattle should be included therein. We are inclined to agree with this contention.

In Midland Oil Co. v. Ball, 115 Okla. 229, 242 P. 161, the plaintiff asserted liability for pollution of his water supply by the escape of salt water from the pits of the operating lessee. In that case defendant contended that there had been no compliance with the terms of the lease or the regulations of the Secretary of the Interior providing for arbitration of disputed damage claims. In this connection we said:

"We think this contention may be dismissed with the statement that no provision appears to have been made in the lease, or regulations of the Secretary, for settling claims against the lessee for damages occasioned by the escape of salt water or base sediment on the lands other than with the surface owners or their lessees, or for damages other than to the surface of the land itself. It is conceded that there is no specific provision for the settlement of damages to live stock in the circumstances of this case."

The significant statement in this case is that there was no provision for settling claims for damages "other than to the surface of the land itself." We consider this significant for the reason that the provision for settlement by arbitration in the lease and regulations applies to all claims for damages arising from the operation of the leases. To the same effect is Indian Territory Illuminating Oil Co. v. Carter, 177 Okla. 1, 57 P. 2d 864.

In the recent case of Mid-Continent Petroleum Co. v. Rhodes, 205 Okla. 651, 240 P. 2d 95, in the supplemental opinion on rehearing, we said:

"This court has determined on several occasions that the applicable Act of Congress and the regulations of the Secretary of the Interior have no application to a claim arising for damages to cattle occasioned by cattle drinking polluted oil and salt water from wells in Osage county under a lease containing the provisions as are embodied in the present oil and gas lease. Indian Territory Illuminating Oil Co. v. Carter, 177 Okla. 1, 57 P. 2d 864; Indian Territory Illuminating Oil Co. v. Graham, 174 Okla. 438, 50 P. 2d 720; Devonian Oil Co. v. Smith, 124 Okla. 71, 254 P. 14; Galt-Brown Co. v. Lay, 183 Okla. 87, 80 P. 2d 567."

We are inclined to agree that the decisions above cited tend to support the claim of defendant that the injuries to the cattle in this case do not fall within the provisions of the lease and regulations imposing liability upon the defendant for damages, but that the damages therein contemplated were damages to growing crops and to improvements on the land, and that the phrase "all other damages as may be occasioned by reason of operations" referred to damages of a similar nature, that is to the land itself or vegetation thereon or other similar damages.

While the lease contains this provision it is also contained in the regulations promulgated in 1932, and the lease is expressly made subject to such regulations. The regulations promulgated by the Secretary have all the force and effect of law. Blanset v. Cardin, 261 Fed. 309, affirmed 256 U. S. 319, 65 L. Ed. 950, 41 S. Ct. 519. In such case we think the rule of ejusdem generis is applicable. That rule, as stated in Walton v. Donnelly, 83 Okla. 233, 201 P. 367, and many other decisions of this court, is "that general words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms." In that case we held that provisions in the city charter of the city of Oklahoma City, that the board of commissioners should have power to assign duties not specifically named above to any department or to transfer duties from the commissioner of one department to another commissioner and another department, meant that the duties which could be transferred referred to the same class of duties as those above mentioned, which were duties not specifically named in the previous section assigning various duties to various commissioners. The same rule is announced in Worley v. French, 184 Okla. 116, 85 P. 2d 296, and in Oklahoma Tax Commission v. Fortinberry Co., 201 Okla. 537, 207 P. 2d 301.

Plaintiff in his brief seeks to distinguish Midland Oil Co. v. Ball and Indian Territory Illuminating Oil Co. v. Carter, supra, for the reason that in Midland Oil Co. v. Ball, the plaintiff was not the owner or lessee of the premises and for the further reason that in both cases the court was passing upon the question of arbitration and the failure of the plaintiff to submit thereto. Examination of the cases indicates that the expressions therein contained are not confined solely to the question of failure to submit to arbitration. Plaintiff in the instant case does not contend that the defendant was negligent in its operations and made no effort to prove negligence. Since we hold that negligence must be shown, we think the parties are entitled to another trial so that plaintiff may allege and prove negligence, if he so desires.

Reversed, with directions to grant defendant a new trial.

HALLEY, C. J., and CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.