**TOMLINSON et al.**

v.

**BAILEY et al.**

No. 35945.

Supreme Court of Oklahoma.

June 1, 1954.

Rehearing Denied Sept. 27, 1955.

Application for Leave to File Second Petition for Rehearing Denied Nov. 1, 1955.

Bowie & Bowie, Pauls Valley, Otey, Johnson & Evans, by Geo. N. Otey, Ardmore, for plaintiffs in error.

Sam J. Goodwin, Pauls Valley, M. M. Thomas, Oklahoma City, for defendants in error.

O'NEAL, Justice.

For present purposes the facts may be briefly stated. Billie Bailey, the defendant in the trial court, was the owner of the surface rights to land located in Garvin County, Oklahoma, upon which land C. W. Tomlinson, Maude R. Tomlinson and The Gilmer Oil Company, a corporation, were the owners of an oil and gas lease under which production had been obtained. For convenience Billie Bailey will be hereinafter referred to as the owner and The Gilmer Oil Company, a corporation, et al. will be referred to as the lessee.

The issues as cast by the pleadings may be briefly stated. Lessee filed its petition praying for a temporary injunction against the landowner on allegations that the landowner interfered with petitioners' operation of producing oil wells and prevented lessee from removing a building and garage from its leased properties. After the trial court entered its temporary injunction the surface owner of the land filed an answer and cross-petition in which it was alleged that the oil lessee permitted salt water to flow over the surface of his land and that in its operation lessee appropriated more of the surface of the land than authorized under its oil and gas lease, or that was reasonably necessary in its operation. Both actual and exemplary damages were prayed for.

Upon the trial the jury returned a verdict in favor of the owner in the amount of $750 as actual damages, $80 for ground rent, and the sum of $250 for exemplary damages, for which aggregate sum judgment was entered in favor of the owner against the lessee. The lessee appeals and for reversal contends that the evidence does not support the verdict and the judgment rendered thereon.

Title 52 O.S.1951 § 296, so far as applicable, provides:

"Salt water shall not be allowed to flow over the surface of the land."

The owner unnecessarily alleged that the lessee negligently and carelessly permitted salt water to escape from five salt water tanks located upon the land. Under the cited statute the act of permitting the salt water to flow over the land constitutes negligence per se. Gulf Pipe Line Co. v. Alred, 182 Okl. 400, 77 P.2d 1155; C. L. McMahon, Inc., v. Lentz, 192 Okl. 153, 134 P.2d 563. Therefore, it became incumbent upon the owner to establish that salt water from the lessee's wells or tanks flowed over the surface of the land and that such violation was the proximate cause of the damages, if any, to the land.

The owner introduced evidence tending to establish that at lessee's well No. 1, located on the west side of his 80 acre farm, that the lessee had constructed three salt water tanks. The earthen banks of the tanks were elevated above the surface of the land and when completely filled the

salt water would seep out and flow down a draw approximately 300 feet over the surface of his land; that the brush and all vegetation covering a considerable acreage of his land was thereby completely destroyed.

The owner, as a witness, testified that on one occasion he observed the salt water in one of the tanks flowing over the dike, and that on another occasion he observed that the earthen bank of one tank had been cut down to permit salt water to drain therefrom and flow down a draw over his land.

A number of witnesses testified that from their examination of the owner's land that from 4 to 17 acres thereof had been completely and permanently destroyed by reason of salt water pollution.

The lessee submitted as a witness the County Surveyor of Garvin County, Oklahoma, who, at lessee's request, ran lines upon the land which appeared to be polluted by salt water. From this survey he was of the opinion that 5.37 acres of the owner's land had been permanently destroyed. This survey was made by him in April 1953, and he expressed no opinion as to the salt water damage to the land as of November 1953, the date of the trial. He made no survey of the land at lessee's No. 2 well located on the east side of the owner's land.

Lessee in support of its contention that there is a total failure of proof of any wrongful act or omission by it resulting in the detriment to the owner argues that as its oil and gas was superior in point of time to the owner's purchase of the surface of the land, that lessee had the right to use so much of the land as was reasonably necessary for such purpose. It may be conceded that under the terms of the lease, lessee had the right to a reasonable use of the lease premises. The trial court so instructed.

It does not follow that by the construction of the salt water tanks lessee was absolved from responding in damages if it permits the salt water to escape therefrom and flow over the surface of the land. See

Mid-Continent Petroleum Corp. v. Rhodes, 205 Okl. 651, 240 P.2d 95.

■ In our view of the case the evidence supports the jury's finding that salt water was permitted to flow over the owner's land and that it permanently destroyed the value of a part thereof.

We next consider the owner's contention that the lessee carelessly and negligently destroyed several acres of his land in the construction of a water line from well No. 2 to adjacent land to the east of the owner's land. The evidence of the owner, corroborated by four additional witnesses, tends to establish that the lessee excavated a strip of land from 15 to 20 feet in width from well No. 2 to the east line of the owner's land; that it laid a 2″ water line in this open ditch which extended over and across a county road and upon property adjacent thereto. The evidence is without dispute that on the adjoining land the lessee removed some underbrush and laid the line on the surface of that land without any excavation being made thereon.

The lessee does not, by brief, assign any reason for the wide excavation made upon the owner's land to lay the water line, nor do we find from an examination of the entire record evidence to sustain the reasonableness or necessity of such construction.

■ The owner's recovery as reflected by the verdict covers an item of $80 as ground rent. The owner had leased a plot of ground upon which a Mr. Ward had moved a building and garage which was occupied by him while employed in the oil field. Subsequently, Mr. Ward sold these buildings to the lessee, which buildings were not used by the lessee in its oil operation. The owner made proof of the usable rental value of the ground so occupied which finding is supported by sufficient evidence to sustain the verdict and judgment rendered thereon.

Lessee makes the assertion that there is a total failure of proof as to any financial detriment suffered by the owner. We do not agree. As we have seen there was a conflict as to the number of acres out of

the 80 acre farm which was completely and permanently destroyed by salt water pollution. Moreover, the evidence tends to establish that the land destroyed was of the reasonable value of $35 an acre.

Lessee further asserts that the record does not disclose sufficient evidence to sustain the verdict and judgment for exemplary damages.

In view of the testimony that there were an unusual number of salt water tanks upon the land at lessee's No. 1 well, and that when they were filled the water would flow over the dikes, and in view of the testimony that the dikes were cut and the water permitted to flow over the owner's land, taken in connection with the unexplained and uncontradicted evidence that the lessee used a bulldozer to excavate a ditch 15 to 20 feet in width from its No. 2 well to the county road but did not make any excavations on the adjoining land for the laying of a 2″ water line from its well No. 2, supports the jury's finding that lessee was motivated by oppression or malice justifying the verdict returned for punitive damages.

Moreover, the circumstance as disclosed by the record that the parties had been unable to reach an amicable settlement for salt water damages to owner's land; or for the payment of an additional well location site; and the further circumstance of owner's refusal to permit lessee to use fresh water on his land, in its drilling of well No. 2, were circumstances which the jury might properly consider in its ultimate findings of malice or oppression, to support its verdict for punitive damages.

Finding no substantial error in the record the judgment is affirmed.

HALLEY, C. J., and CORN, ARNOLD and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and WELCH and DAVISON, JJ., concur as to actual damages and dissent as to punitive damages.

WELCH, Justice (dissenting).

I respectfully dissent to that portion of the majority opinion which allows recovery of exemplary damages or punitive damages in this case. I do not think that the record justifies the conclusion stated in the majority opinion "that lessee was motivated by oppression or malice". I think rather that the lessee was motivated by a desire, and was making effort, to dispose of the salt water.

It seems there was substantially more salt water here involved than is usually encountered in drilling operations of this size, but I think when the lessee has compensated plaintiff in full for all actual damages, that there is no sufficient basis for assessing further damages against defendant as punitive damages.

The only authority cited by plaintiff to sustain his right to exemplary or punitive damages is our former decision in Oden v. Russell, 207 Okl. 570, 251 P.2d 184. It requires but a casual examination of that decision to see that the cases are sharply different. It is at once apparent that under the facts there shown the recovery of exemplary or punitive damages was fully justified, but no such malicious or oppressive action or conduct is shown in this case.

In the case of Tinker v. Scharnhorst, 129 Okl. 118, 263 P. 645, we held in paragraph 5 of the syllabus as follows:

"Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and as a restraint to the transgressor, and are allowed only in cases where malice, fraud, oppression, or gross negligence enter into the cause of action."

I agree with the rule of law stated in paragraph 2 of the majority opinion here, but on the stated facts in the majority opinion I think the requirements of the rule of law are not met in this case. I therefore think the majority opinion does not do even justice in this case, and is not sound as a precedent for future cases where similar facts are presented. I therefore dissent.