Jake L. HAMON, Edwin B. Cox, Edwin L. Cox, Elizabeth Lockridge Cox and Rosmo Oil Company, a Corporation, Plaintiffs in Error,

v.

Lloyd H. GARDNER, Defendant in Error.

No. 37096.

Supreme Court of Oklahoma.

June 25, 1957.

Rehearing Denied Sept. 10, 1957.

Frank T. McCoy, John T. Craig, Robert P. Kelly, Pawhuska, for plaintiffs in error.

F. W. Files, Pawhuska, for defendant in error.

JACKSON, Justice.

This appeal involves an action by Lloyd H. Gardner, as plaintiff, against Jake L. Hamon, Edwin B. Cox, Edwin L. Cox, Elizabeth Lockridge Cox, and Rosmo Oil Company, a corporation, as defendants, for alleged damages to land and cattle resulting from defendants' oil mining operations under a lease from the Osage Tribe of Indians.

The Secretary of the Interior approved the oil and gas lease on the land in question in Osage County, Oklahoma, in January, 1947. Defendants acquired the lease by an assignment, approved by the Secretary of the Interior, on February 1, 1951. Plaintiff obtained his surface rights by deed dated May 5, 1951.

In plaintiff's second amended petition he alleges that defendants drilled five wells on the land, constructed roads, erected an electric power line, laid water and oil pipelines, and permitted salt water to collect in slush pits and to flow over the land, resulting in damages to his land and to his cattle which were pastured on the 160 acres in question and other pasture lands held by plaintiff under an agricultural lease. Verdict and judgment were rendered in favor of plaintiff for land damages on his first cause of action and for damages to his cattle on his second cause of action, and defendants appeal. Other essential facts will be related in connection with the various assignments of error.

Defendants Jake L. Hamon, Edwin B. Cox, Edwin L. Cox and Elizabeth Lockridge Cox, all residents of Dallas, Texas, filed motion to quash the summons upon the ground that the summons, as to each of them, was not served or returned as re-

quired by law. The trial court overruled their motion to quash and defendants present this as error. We think there is merit in this proposition. In this connection the facts are that plaintiff caused summons to be issued to the Sheriff of Osage County directing him to serve the defendants Jake L. Hamon, Edwin B. Cox, Edwin L. Cox and Elizabeth Lockridge Cox by serving Ray Gathright, of Pawhuska, in Osage County, as their "service agent." The summons was served on Ray Gathright as directed. The records at the Osage Agency list Tolson and Gathright as local agents, however, the file did not contain any letter of appointment by any of the defendants.

Plaintiff attempts to justify this method of service under a rule or regulation of the Secretary of the Interior, Code of Federal Regulations, Title 25, Indians, 1949 Edition, Section 180.43, which provides as follows:

"Each and every lessee and assignee shall, from the date of lease or assignment, maintain an office at Pawhuska, Okla., with an agent upon whom service of process may be held in conformity with the laws of the State of Oklahoma, and who shall have authority to represent and speak for the lessee or assignee in controversies affecting any individual member of the Osage Tribe."

Plaintiff further contends that the foregoing rule or regulation is authorized by Section 3, Act of Congress June 28, 1906 (34 Stat.L. 539), which provides in part:

"* * * and leases for all oil, gas, and other minerals, covered by selections and division of land herein provided for, may be made by the Osage tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe: * * *."

The question before us is whether the Secretary of the Interior may promulgate a rule or regulation authorizing a substitute service of process upon individual defendants who are sued in the State courts of Oklahoma. Since neither of the parties to this action are Osage Indians, and no interest of the Osage Tribe is involved, the question more precisely presented is whether the Secretary of the Interior may promulgate a rule or regulation for substitute service of process in State courts in actions where no interests of the Osage Tribe, or any member thereof, is involved.

It is not so contended, nor do we find, where the Oklahoma Legislature has ever implemented Section 180.43, Code of Federal Regulations, supra, by authorizing the appointment of a service agent upon whom process may be had. It is admitted that the regulation is in conflict with Oklahoma Statutes which provide the manner and method of process.

Typical among plaintiff's citations of authority are State ex rel. Kaser v. Leonard, 164 Or. 579, 94 P.2d 1113, 102 P.2d 197, 129 A.L.R. 1125, and Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. In the 2nd syllabus of the Kaser case it is held:

"The 'regulations of an executive department' are the general rules relating to the subject on which a department acts, made by the head of the department under some act of Congress conferring power to make such regulations, and thereby give to them the force of law."

In the Maryland Casualty Co. case [251 U.S. 342, 40 S.Ct. 157] it is held:

"It is settled by many recent decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision."

In Indian Territory Illuminating Oil Co. v. Carter, 177 Okl. 1, 57 P.2d 864, 868, we find the following quotation:

"It is well settled that department regulations may not invade the field of legislation but must be confined

within the limits of congressional enactment. In International Ry. Co. v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 182, 66 L.Ed. 341, the court said: 'Section 161 does not confer upon the Secretary any legislative power.' Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267; United States v. George, 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712. 'A regulation to be valid must be reasonable and must be consistent with law." Commissioner of Internal Revenue v. Van Vorst, 9 Cir., 59 F.2d 677, 679.

■ The regulation, Section 180.43, supra, provides for the appointment of an "agent upon whom service of process may be held *in conformity with laws of the State of Oklahoma * * *.*"* (Emphasis ours.) Since this regulation has not been implemented by the Oklahoma Legislature the method of service of process employed herein is not in conformity with Oklahoma law, but is in conflict therewith. In First State Bank of Tuskahoma v. J. B. Klein Iron & Foundry Co., 180 Okl. 42, 68 P.2d 777, it is held in the second paragraph of the syllabus:

"A defendant cannot be brought into court except as the law directs, * *."

We are of the opinion and hold that absent implementing legislation the Secretary of the Interior may not promulgate an effective rule or regulation for substitute service of process in actions in the State courts of Oklahoma where no interests of the Osage Tribe, or any member thereof, is involved.

■ Plaintiff argues that defendants' motion to quash, on the sole ground that the summons and purported service thereof was not issued, served and returned according to law, without specifically raising the jurisdictional question over their persons, is not sufficient; citing Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1; Eureka Tool Co. v. Collins, 182 Okl. 552, 78 P.2d 1057; and Summers v. Williams, 206 Okl. 164, 242 P.2d 139. These cases are authority for the proposition that where the summons and return are regular upon their face, and upon examination of the summons and return they appear to conform to law, then it is necessary to set forth in the motion to quash with particularity any defects in the summons and return which are not apparent on the face of the summons and return. When the summons and return in the instant case are examined it is apparent on their face that they do not comply with any Oklahoma Statute. We hold that where the summons and return are defective on their face it is unnecessary to specifically point out, in the motion to quash, wherein the summons and return do not comply with law.

From what has been said it follows that the verdict and judgment on both causes of action against Jake L. Hamon, Edwin B. Cox, Edwin L. Cox, and Elizabeth Lockridge Cox must be vacated and set aside.

We will next consider whether the verdict and judgment as to each cause of action can stand as to Rosmo Oil Company. It is admitted that Rosmo Oil Company owned an interest in the oil and gas lease and that Jake L. Hamon was operating the lease as agent for Rosmo Oil Company and the other named defendants.

■ Defendants contend that the filing of the second amended petition worked a dismissal of the case as to all defendants except Jake L. Hamon, citing 12 O.S.1951 § 264 to the effect that a petition must contain the name of the court, the county in which the action is brought, and the names of the parties, plaintiff and defendant. In this connection plaintiff's original and amended petitions contained the names of all of the defendants in the heading or style of the case. In the Second Amended Petition the action is styled "Lloyd J. Gardner, plaintiff, vs. Jake L. Hamon et al., defendants." In the body of the petition reference is made to Rosmo Oil Company, as a corporation. All of the defendants filed an answer to the Second Amended Petition under the obvious assumption that all defendants were still parties defendant, and so intended by the plaintiff. The cases relied

on by defendants, Cushing Gasoline Co. v. Hutchins, 93 Okl. 13, 219 P. 408, and Jefferson v. Damron, 207 Okl. 406, 250 P.2d 225, hold that the allegations of prior pleadings, except as repeated in the amended petition, are wholly abandoned. These cases are not decisive of the issue here. Here the amended petition refers to the original defendants by use of the words "et al." which was obviously understood by all defendants when they filed their answer and went to trial on the Second Amended Petition. This is especially true of Rosmo Oil Company since it was described as a corporation in the body of the Second Amended Petition. Under these facts we hold that the Second Amended Petition did not effectively dismiss the case as to any of the defendants.

■■■ Defendants contend it was error for the plaintiff to recover damages on his second cause of action for injuries to his cattle when a portion of the total alleged damages to cattle was barred by the statute of limitations. In this connection plaintiff's original petition was filed on September 12, 1952, and alleged damages to plaintiff's cattle by reason of drinking salt water from slush pits *on plaintiff's* land on January 27, 1952. His First Amended Petition made the same allegation. However, in plaintiff's Second Amended Petition, filed on March 22, 1954, he alleges for the first time a new and different cause of complaint for damages, as follows:

"That the land described hereinabove belonging to plaintiff adjoins land owned by or in possession of Curt Ballew, and said defendants were carrying on their oil operations on said land; that the fence between the land owned by this plaintiff above described and the land owned by or under the control of Curt Ballew was bull-dozed down by the said defendants; that the cattle belonging to said plaintiff entered upon the land of Curt Ballew and that slush ponds on said Curt Ballew's land and adjacent to the opening in said fence were impregnated with salt water and oil; and that the cattle of said

plaintiff drank therefrom and were damaged as hereinafter alleged."

The Second Amended Petition alleges that plaintiff's cattle drank salt water from two slush pits on plaintiff's land and also drank salt water from slush pits on the Ballew land. The total cattle damage from drinking salt water on the two pastures (Plaintiff's and Ballew's) was alleged to be $2,000. Neither the pleadings nor the evidence attempts to show what percentage of damages resulted from drinking water on plaintiff's land.

We are of the opinion that this new source of damages in drinking salt water on the Ballew land, alleged to have occurred more than two years prior to the filing of plaintiff's Second Amended Petition, is barred by the two-year statute of limitations. 12 O.S.1951 § 95(3). The alleged damages occurring on the Ballew land injects an entirely new issue into plaintiff's cause of complaint which is entirely foreign to, and not a part of, the original complaint or petition and amended petition. The petition and Second Amended Petition herein present a wholly different situation from that presented in Midland Oil Co. v. Ball, 115 Okl. 229, 242 P. 161. In that case plaintiff complained in his original petition of salt water in a certain described pond and creek in plaintiff's pasture. He was permitted by trial amendment to more accurately locate the pond and creek by changing the land description on which the pond and creek were located. The opinion in that case does not indicate that there were two or more ponds and creeks, or sources of injury, in plaintiff's pasture, but does indicate that regardless of the legal description of plaintiff's pasture, the complaint throughout the pleadings and trial had reference to only one pond and creek that caused injury to plaintiff's cattle. In the second paragraph of the syllabus in Fowler v. City of Seminole, 202 Okl. 635, 217 P. 2d 513, 514, this court held:

"The general rule is that an amendment which introduces a new or different cause of action and makes a new or different demand does not relate

back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit on a new cause of action, so that the statute continues to run until the amendment is filed."

We hold that the alleged damages from drinking salt water on the Ballew land is barred by the statute of limitations.

 The pleadings and the evidence in this case show that the defendants moved upon plaintiff's pasture on January 15, 1952, and on January 27, 1952, had completed the drilling of two wells and had started on the third well. Two slush pits were open and unfenced and water was running from one of the pits into the other and thence into a small creek or "draw." Cattle tracks were found around one or two of the slush pits on plaintiff's land on January 27, 1952. The evidence further shows that plaintiff was away from his home and his pasture between January 21st and 27th, 1952, and did not know, and had not been advised, that defendants were carrying on drilling operations in his pasture until January 27, 1952, at which time he removed his cattle from the pasture. Defendants through mistake, had paid the well "location fees" to Curt Ballew, believing they were drilling on Ballew's land. Thus plaintiff had no notice of defendants' operations and no opportunity to protect his cattle which were running upon his pasture, until after they had sustained the alleged damages. Under these circumstances we are of the opinion that it was the duty of defendants to use reasonable care to discover and protect plaintiff's cattle against injury until such time as plaintiff had knowledge of defendants' operations and an opportunity to protect his cattle.

In Mid-Continent Petroleum Corp. v. Rhodes, 205 Okl. 651, 240 P.2d 95, it is held in the first paragraph of the syllabus that an oil lessee under an Osage Indian Tribal lease is under no legal duty to fence off tanks, machinery, etc., to protect livestock from having access thereto; but that the oil lessee owes the duty to not intentionally, willfully, or wantonly injure livestock, and after discovery of their peril he must use reasonable care to avoid injuring them. That case is cited by defendants herein as decisive of the question here presented. We cannot agree. In that case the plaintiff testified that he was present with and looking after his cattle daily and discussed with defendants therein the question of fencing. In the case before us the plaintiff was not present, had no knowledge of defendants' operations, and no opportunity to protect his cattle. Under these circumstances the duty was upon defendants to use reasonable care to discover and protect plaintiff's cattle from injury until plaintiff had notice of the operations and an opportunity, and corresponding duty, to protect himself.

While the verdict and judgment for cattle damage against Rosmo Oil Company cannot be sustained in view of the statute of limitations barring recovery for injuries sustained on the Ballew land, plaintiff should be given a new trial as to his second cause of action and an opportunity to present his case for injuries to his cattle arising solely from drinking salt water upon plaintiff's land.

Defendants complain of the verdict and judgment for land damages on plaintiff's first cause of action, because of the insufficiency of plaintiff's evidence, and improper instructions as to the measure of damages.

 In this connection the verdict was for $850 for land damages. Defendants admit liability for land damage in the sum of $237 and contend that the verdict over and beyond that sum is excessive. In this connection the proof shows that defendants constructed 167 rods of roads on plaintiff's land which were from 80 to 100 feet in width; an electric highline with eleven poles was constructed and maintained upon the property; two thousand feet of two inch line was laid; and there is testimony that salt water was permitted to flow into the creek for about 250 yards where a pond was constructed to catch and hold the water until it could be hauled away. While plain-

tiff agreed to the construction of this pond there is no evidence that he contracted away his right to be paid damages therefor. There was testimony that plaintiff's land had been depreciated in value to the extent of $2,000. We are unable to say that the $850 verdict is excessive.

Defendants complain of Instruction No. 14 which told the jury in substance that the measure of damages to plaintiff's land, if any, would be the difference between the fair market value of the land immediately before the damage, if any, and the fair market value of the land after the full extent of the damages were ascertained. It is argued that this instruction assumes that the damages were permanent, and that "permanency" is not supported by the evidence.

There is testimony in the record that the roads were graded and the ground scraped off and pushed back for a width of from 80 to 100 feet. That the native grass roots were destroyed. Presumptively the grass roots were also destroyed where the highline poles were erected and where the pipelines were installed.

In 175 A.L.R. § 40, at page 207, it is said:

"Where not only the grass but the roots themselves are injured or destroyed, the damages as to the roots is ordinarily measured by the difference in the value of the land immediately before and immediately after the injury or destruction."

In Wichita Falls & N. W. Ry. Co. v. Gant, 56 Okl. 727, 156 P. 672, the court quotes with approval from Thompson on Negligence, Sec. 7237, as follows:

"The measure of damages for the destruction of grass and sod by fire is the value of the grass destroyed together with the difference in the value of the land immediately before and after the fire. * * *."

We are of the opinion and hold that the trial court properly instructed as to the measure of plaintiff's land damages.

The verdict and judgment on both causes of action against defendants Jake L. Hamon, Edwin B. Cox, Edwin L. Cox and Elizabeth Lockridge Cox, are hereby vacated and set aside.

The judgment against Rosmo Oil Company for land damages on plaintiff's first cause of action for $850 is affirmed.

The judgment against Rosmo Oil Company on plaintiff's second cause of action for damages to his cattle is reversed for new trial in accordance with the views herein expressed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, and BLACKBIRD, JJ., concur.