T. H. McCASLAND and the Drilling and Exploration Company, Inc., Plaintiffs in Error,

v.

Delbert BURTON, Defendant In Error.

No. 36843.

Supreme Court of Oklahoma.

Jan. 17, 1956.

Brown, Cund & Brown, Duncan, for plaintiffs in error.

Jones & Beauchamp, Duncan, for defendant in error.

BLACKBIRD, Justice.

Defendant in error is the owner of the surface of 320 acres of Stephens County land, 160 acres of which is covered by an oil and gas lease owned by plaintiffs in error. In the early part of 1953, defendant in error had 70 head of cattle pasturing on his land, and plaintiffs in error were producing oil and salt water from a well on their lease known as the McCasland-Yeager or Yeager No. 1. Thereafter, the action, out of which this appeal has arisen, was commenced by defendant in error, as plaintiff, against plaintiffs in error, as defendants, to recover damages he allegedly suffered by reason of salt water produced by the well, escaping from a double pit or pits, which defendants dug to hold the water, and running out onto the surface of the land, where it killed vegetation, and into plaintiff's stock watering pond, and was allegedly drunk by some of plaintiff's cattle. Plaintiff's alleged damages in the total sum of $1,786 were itemized in his petition substantially as follows:

$650.00 for the value of 4 cows which allegedly died from drinking the salt water;

$350.00 for abortions suffered by 7 other cows alleged to have been the result of their drinking the salt water;

$150.00 for damages to 5 acres of grass land;

$100.00 for the expense of moving plaintiff's cattle to other pasture land;

$6.00 for services of a veterinarian doctor;

$350.00 for the cost of making arrangements for a new source of stock water; and

$180.00 for loss of use of pasture.

At the trial of the action, which defendants answered by general denial, the court withdrew from the jury's consideration two items of damages about which plaintiff testified. One was 40 acres of vetch and rye, not mentioned in his petition, and the other was the cost of a water pump which plaintiff purchased for $350, but still had, which sum was the same total amount of damages attributed in his petition to the cost of making arrangements for a substitute water supply. This left intact all other items alleged in plaintiff's petition aggregating a total of $1,436. The jury returned a general verdict in plaintiff's favor for $1,286 and judgment was entered accordingly. After the overruling of defendants' motion for a new trial, they perfected the present appeal.

For reversal they contend first that the trial court erred in instructing the jury with reference to the fact that violation of the State statute prohibiting

salt water, refuse, etc., from oil or gas wells, being permitted to run onto leases, stock tanks and over land constitutes negligence. The court gave two separate instructions, numbered 3 and 4, which were not identical, but both of which dealt with this subject. Defense counsel does not assert that the giving of either instruction, in itself, constituted error, but they contend that the giving of *both* placed undue emphasis on the matter. Counsel fails to point out, or demonstrate, that the giving of both of these instructions was in any way prejudicial to their clients, but they cite certain language from a Washington case to the effect that after the court has once instructed the jury on the law of the case, further instructions couched in different language "have more tendency to confuse than to enlighten." In Thompson v. Galion Iron Works & Mfg. Co., 201 Okl. 182, 203 P.2d 438, 440, this Court held:

"Ordinarily repetition in instructions of itself is not reversible error unless it clearly appears to have misled the jury."

We have carefully examined both instructions involved, as well as the entire record in this case, and find nothing to indicate that the giving of both of them in any manner confused or misled the jury, or was prejudicial to the defendants. We therefore conclude that error, if any, in the giving of these instructions, was harmless.

In Proposition 2 of defendants' brief they complain of several alleged errors of the trial court, but none of them are argued except those alleging error of the court in overruling their challenge, by demurrer, to the sufficiency of the plaintiff's evidence and their challenge to the sufficiency of the evidence, as a whole, by their requested Instruction No. 1, wherein they asked the court to "advise" the jury to return a verdict in their favor. Since the requested instruction came after defendants had saved exceptions to the court's overruling of their motion for a directed verdict, which motion was interposed after defendants had failed to stand on their demurrer to plaintiff's evidence and had introduced evidence of their own, we will consider only the question of whether or not the evidence as a whole was sufficient for submission to the jury for rendition of a general verdict. See cases cited in North American Accident Insurance Co. v. Ralls, Okl., 288 P.2d 1097, 1099.

The gist of defendants' arguments is that the evidence is insufficient to show, by a preponderance thereof, that the salt water which concededly escaped from the salt water pits on their lease was the proximate cause of the death of four of plaintiff's cattle that died and the abortions that seven others suffered. Their counsel say that, in order to sustain the verdict, it must be assumed: First, that the water escaping from the pits contained sufficient amount of salt to be injurious to cattle; and, Second, that if such water was so injurious, the livestock drank sufficient of it to cause the deaths and abortions.

As to the question involved in the first of the claimed assumptions, the uncontradicted evidence shows that plaintiff, in the company of Dr. Ryan, a veterinarian, took samples of water from the salt water pit on the premises and delivered one of them to Jack Womack, Sanitarian of the Stephens County Health Department, who in turn, mailed it to Mr. A. G. Maxey, Assistant State Chemist of the State Health Department, at Oklahoma City, to be analyzed. Mr. Maxey testified that this sample contained 7.09% of "calculated" salt, or 7.09 pounds of salt to every twelve gallons of water, and that such salt content was excessive for drinking purposes. Dr. Ryan, who was called by plaintiff to examine his cattle, stated that they were definitely sick and emaciated and had diarrhea. He further testified that he believed it had been proven that "3.3 to about $6\frac{1}{2}$ pounds of salt (to 12 gallons of water) is a fatal dose to a cow * * *". He further testified that a cow drinks 10 to 15 gallons of water per day, and that in his opinion, if a cow should drink as much as 7.09 pounds of salt in 12 gallons of water "she would die." He further testified that he was familiar with the symptoms of salt water poisoning in cattle, described what they are, and then answered, in the affirmative, the question:

"Did you see any of Mr. Burton's cows that had any of those symptoms?".

 As to the question of whether plaintiff's cattle drank water of such injurious content, the evidence is undisputed that when Dr. Ryan was examining them they were drinking from pools that had been left by a ditch through which leakage from defendants' salt water pit or pits flowed onto the land. He further stated that where fresh water is available cattle will ordinarily drink it instead of salt water. There is no evidence directly disputing that of the plaintiff, and others of his witnesses, that his cattle had drunk the salt water on more than one occasion within in a short time prior to the injuries and deaths complained of. After thoroughly examining the record we are of the opinion that the evidence amply supports the verdict in the respects it is claimed to be insufficient. It is similar to that in Wilcox Oil Co. v. Walters, Okl., 284 P.2d 726, and Phillips Petroleum Co. v. Sheel, 208 Okl. 416, 256 P.2d 815, and we think stronger than that in Rock Island Oil & Refining Co. v. Hutchinson, 208 Okl. 259, 255 P.2d 234, in which we held that causal connection, in such cases, may be proved by circumstantial evidence, which need not rise to that degree of certainty which will exclude every other reasonable conclusion than that arrived at by the jury. See also Peppers Refining Co. v. Spivey, Okl., 285 P.2d 228. In view of the fact that the proof above referred to was nowhere in the record directly or seriously disputed, that from the evidence there can be little doubt that the cattle in question had access to the salt water, Rock Island Oil & Refining Co. v. Hutchinson, supra, 255 P.2d at page 238, and that there was no evidence introduced of any existing condition that could have given plaintiff's cattle the salt water poisoning symptoms which they undisputedly had, or could have caused the deaths that occurred, we think the jury could reasonably infer therefrom that such poisoning was the cause of the abortions and deaths of the particular cattle involved in plaintiff's alleged cause of action. There was no evidence, either circumstantial or direct, to support any other reasonable conclusion.

As we have found in none of the arguments presented by defendants, sufficient cause for reversal of the trial court's judgment, it is hereby affirmed.