**Robert L. LINN, Appellee,**

v.

**BARNETT'S INC., a corporation, Appellant.**

**No. 44621.**

Supreme Court of Oklahoma.

Nov. 21, 1972.

Watts, Looney, Nichols & Johnson, by Robert L. Huckaby, Oklahoma City, for appellee.

Keith McMillin, Andrews, Mosburg, Davis, Elam, Legg & Kornfeld, Oklahoma City, for appellant.

LAVENDER, Justice.

This appeal involves a verdict, and judgment, for the appellee, Robert L. Linn, as plaintiff, against the appellant, Barnett's, Inc., as defendant, for damages arising out of personal injuries sustained in the defendant's place of business.

Plaintiff alleges that he was a business invitee of the defendant at the time of his

injury; that he was injured when his left foot and leg were pinned between two rolls of carpeting while he was examining carpeting in a storage room; and that his injuries were the result of the defendant's failure to exercise due care in the stacking of some rolls of carpeting in its storage room.

The defendant's first proposition is that the trial court erred in overruling its demurrer to the plaintiff's evidence. It does not question the plaintiff's injuries, the extent thereof, where or when they occurred, or any amount involved in the verdict and judgment. It contends only that the plaintiff failed to show that the carpeting in question was stacked in a negligent or dangerous manner and that the accident occurred as a result of the manner in which the carpeting was stacked.

According to the plaintiff's testimony, he had gone to the defendant's retail store some 17 months prior to his injury to purchase some carpeting to be installed in a den he was building in his home. Jerry Akin (the general manager and one of the owners of the store) waited on him. He told Akin what he wanted, Akin took him to a storage room where there were a number of stacks of rolls of carpeting. He decided on a white one, which was 12 feet wide with double jute backing, and made a $40.00 down payment, by check (which was shown to have been cashed by the defendant), on a 46-foot length, to hold it until he got his den ready for it.

On the day of his injury, the plaintiff went back to the store to notify them that he was close to being ready for the carpet and to make sure that the color and pattern (low and high tufts) would suit his purpose—using it on the ceiling instead of acoustical tiles. He talked with Mr. Akin, who took him to a storage room two doors east of the retail store, unlocked the front door, which was near the northwest corner of the room, and both went in. The room was about 12 or 13 feet wide east-west. There were several stacks of rolls of carpeting in the room, all oriented north-

south, with various numbers of rolls in the stacks. Some of the stacks consisted of 12-foot carpeting and some consisted of 15-foot carpeting. Each roll was about 18 inches in diameter, would weigh some 250 to 300 pounds, and was on a "spindle," about six inches in diameter, which protruded from the ends of the roll several inches, up to six or eight inches. Most, if not all, of the rolls were wrapped in slick brown paper.

In the first stack inside the front door of the room, there were 15 or more rolls, stacked pyramid fashion, with one less roll in each ascending roll of the stack, with the inner roll of the bottom row being against, or near, the east wall of the room. The ends of the rolls in that stack were staggered. A second stack along the east wall of the room, and a few inches south of the first stack, contained fewer rolls of carpeting, and there was at least one less roll on the bottom row of rolls, than in the first stack. Almost directly west of the second stack there was a three-roll stack, all wrapped in slick brown paper. Two of the rolls were on the floor with the inner one against, or next to, the east wall of the room, with the third roll on top. However the plaintiff's testimony does not disclose the distance, if any, between the two bottom rolls at that time.

The east edge of the outer roll on the bottom row of the three-roll stack and the west edge of the outer roll on the bottom row of the first stack were about the same distance from the east wall of the room, but the north end of that roll of the three-roll stack was just far enough south of the south end of that roll of the first stack that a person could pass, at an angle, between them, by lifting one foot over the end of one of those rolls.

When the plaintiff and Mr. Akin entered the room that day, they proceeded to the south end of the first stack. Mr. Akin cut the paper wrapper on the next-to-outer roll on the bottom of the first stack (which protruded farther south than the outer roll) far enough to turn back the edge of

the carpeting and see its color and weave pattern. It was 15-feet wide, had a latex backing, and was an off-white instead of white. After they had talked for 10 to 15 minutes about the difference, or what the plaintiff thought were the differences, between that carpeting and the carpeting the plaintiff had seen and ordered some 17 months before, some one came in and told Mr. Akin he was wanted on the phone at the store. All three went back to the store, leaving the front door unlocked, and Mr. Akin talked on the phone. The phone was on a wall in the carpet and furniture display room of the store. After the plaintiff had looked at carpets and furniture in the vicinity of the phone for about 10 minutes, Mr. Akin was still talking on the phone, on the same, or a second, call, the plaintiff pointed toward the east, leaned over and asked Mr. Akin if it would be all right for him to go back to see which way the design lines ran in the carpeting. He said that Mr. Akin nodded his head, up and down, so he went back to the storage room, which was still unlocked, entered and, stepping one foot over the end of the outer roll on the bottom of the three-roll stack without touching any of the rolls in that stack, proceeded to the same roll of white carpeting. He repeated, twice, on cross-examination, that he never did touch any of the rolls in the three-roll stack prior to the accident.

Standing with his left leg to the west of, but next to, the roll of white carpeting, he bent over and had just started to lift the edge of the carpeting to look at the weave pattern when one of the rolls from the three-roll stack, or its spindle, contacted the back of his left leg, twisted his left foot from a southeasterly direction to a northeasterly direction, pushed his toes into, or under, the white roll, and pinned his left leg and foot in that position. He heard a snap, felt great pain in his leg and foot, and sat down on the end of the roll that caused the trouble. All three rolls of the three-roll stack were on the floor. He had not seen or heard any movement behind him, and thought, without being cer-

tain, that the top roll of the three-roll stack had slipped down between the two bottom rolls, forcing the outer one against his leg.

When he sat down, he started yelling for help and, after about five to eight minutes, a man starting to get in a car in front of the building heard him, came in, and, at his request, went for help. Mr. Akin and five or six other people came in and some of them skidded the roll he was sitting on to the south and freed his leg and foot. There had been no two-by-four (board) or other stop against the outer roll of the three-roll stack to keep it from rolling or sliding away from the other bottom roll. Some one called an ambulance and he was taken to a hospital, where he was treated.

As admissions against the interest of the defendant, permitted under 12 O.S.1961 and 1971 § 447, portions of a deposition of Jerry Akin, one of the owners of the defendant corporation and the general manager of the store in question at all times involved, were read into evidence. According to those statements, the carpeting he showed the plaintiff on the day of the accident was exactly like the carpeting he had picked out 17 months before, except that it was 15 feet wide instead of 12 feet wide; and, while the deponent was talking on the phone after showing that carpeting to the plaintiff, the plaintiff "made a hand motion towards me and said that he was going to be leaving, or going to go back, or go, or see you later or something." With those exceptions, those deposition statements concerning the events on the day of the accident, and concerning the diameter, length, weight and arrangement of the rolls of carpeting in the storage room where the accident occurred, were not in conflict with the plaintiff's testimony.

According to those deposition statements, the rolls of carpeting in the storage room had been stacked by defendant's employees and he (Akin) had helped stack the ones in the first stack. He would not say how far apart the two rolls on the bottom of the three-roll stack were, or the exact position

of the upper roll with respect to them, on the day of the accident, but they were in the same position as when they were placed in the storage room by the defendant's employees. In the storage room, they always stack rolls of carpeting pyramid fashion and, when there are 15 to 20 rolls in a stack, they put a two-by-four against the outer roll of the bottom row, as a block to keep that one from sliding out and letting the whole stack down. He had, prior to the day of this accident, instructed the employees to use their own judgment about using two-by-four blocks. He had given no specific instructions concerning three-roll stacks, but, on the day of the accident, there was no block under this one.

Insofar as damages, and the amounts thereof, are concerned, there was evidence sufficient to support the verdict and judgment for the plaintiff.

The defendant's demurrer to the plaintiff's evidence was overruled. Instead of standing on the demurrer, the defendant introduced evidence and, when the plaintiff rested without offering any further evidence, renewed its demurrer and moved the court to direct a verdict in its favor.

In such a situation, if we are to consider the sufficiency of the evidence, we must consider all of the evidence, not just that offered by the plaintiff, to determine whether there is any evidence which reasonably supports the verdict and judgment for the plaintiff. See: W. L. Hulett Lumber Company v. Bartlett-Collins Company (1952), 206 Okl. 93, 241 P.2d 378; Chickasha Cotton Oil Company et al. v. Hancock et al. (1957), Okl., 306 P.2d 330.

Jerry Akin was the only witness for the defendant. He had been working for Barnett's for sixteen and a half years, and, about five years prior to the trial, had become general manager of the business, with no one over him, as well as being a stockholder of the corporation. This time he said that, when the plaintiff was leaving the store while he was talking on the phone, the plaintiff, who was 12 to 15 feet away from him, said nothing that he heard but made a motion with his hand indicating that he was leaving, or going, or see you later, or something like that, and he (Akin) nodded an acknowledgement. With that exception, his testimony concerning events on the day of the accident was substantially the same as that read from his earlier deposition. When he went back to the storage room after being told by Mr. Hancock (owner of the grocery between the defendant's store and storage room) that he had a boy hurt in the warehouse, all three rolls of the three-roll stack were flat on the floor, touching each other along their length, but he had no way of knowing whether the roll that had been on top was on the outside or was between the other two rolls. The plaintiff was sitting on the outside roll, facing north, with his foot tightly wedged between that roll and the white roll they had been looking at earlier. He and another man lifted the south end of the roll the plaintiff was sitting on enough to slide it south and free the plaintiff's foot.

They would put a two-by-four under the outside bottom roll of a stack whenever it would start sliding out, which happens very slowly when it happens, but, on the day of the accident, no stack in the storage room had a stop under it.

The floor of the storage room was covered with 9-inch "tiles" exactly like those on the floor of the court room where the trial was being held.

Over objections by the plaintiff, Akin testified that, some time after this accident, at the request of the defendant's attorney, he conducted two tests, in the same storage room, on the same floor, and using three rolls of carpeting of the same width (12 feet) and weight (about 300 pounds each), and with the same type wrapping, as those in the three-roll stack involved in this accident. First, he had two of the rolls placed on the floor, touching each other along their length, with the third roll on top, "in the middle." Then the witness (who testified he weighed 240 pounds, got up on the top roll and jumped up and down. Next,

he had two of the rolls placed on the floor, ten inches apart "at each end," with the third roll in the crevice between them. Again, he got up on the top roll and jumped up and down. From those tests and his years of experience in the carpet business, it is his opinion that, at the time and place of this accident, the top roll of the three-roll stack involved in the accident, could not have slid down between the two bottom rolls, to the floor, "without some assistance from somebody."

On cross-examination, Mr. Akin testified that the top roll of the three-roll stack could not have rolled, or fallen, to the floor in front of the other two rolls. He did not remember whether he had, or had not, made any contact at all with any of the rolls in the three-roll stack when he and the plaintiff went to the south end of the first stack to look at the white carpeting, or when they left and went back to the store for his phone call, but he knew that he did not kick any of them.

His testimony, like that of the plaintiff, does not disclose the distance, if any, between the two bottom rolls of the three-roll stack of carpeting when they went, together, to look at the white carpeting. He did not testify, based on his knowledge and experience in the carpet business, that, during the period of time since the three rolls had been stacked in the storage room by the defendant's employees, and had remained there without having been moved by the defendant's employees, the top roll of the stack could not, possibly, have been slipping, gradually, down between the two bottom rolls of the stack and then, for some reason (such as a difference in the floor surface), suddenly increasing in speed of slipping and completing its journey to the floor between the other two rolls.

In the absence of such testimony, we think it could reasonably be inferred from the facts in evidence that that could happen and, in this instance, did happen. Under the testimony, placing a two-by-four, or similar block, under the outer roll of the bottom row of the stack would pre-vent that from happening. And, we think that it could reasonably be inferred from the facts in evidence that the exercise of reasonable care in the circumstances required the defendant to use such a stop under this stack of carpeting and that the plaintiff's injury was the direct and proximate result of the defendant's failure to do so.

As this court held in the second paragraph of the syllabus to McCasland et al. v. Burton (1956), Okl., 292 P.2d 396 (quoted in Chickasha Cotton Oil Company et al. v. Hancock et al., supra):

"Facts may be proved by circumstantial, as well as by positive or direct evidence, and it is not necessary that the proof rise to that degree of certainty which will exclude every other reasonable conclusion than the one arrived at by the jury."

The verdict for the plaintiff in the present case is reasonably supported by the facts in evidence and the inferences legally to be drawn therefrom.

The defendant's second proposition is that, in view of the defendant's pleading contributory negligence, and the facts in evidence and the inferences to be drawn therefrom, the trial court erred in failing, and in refusing, to give an instruction on contributory negligence.

In its argument thereunder, the defendant asks the court to base an inference of contributory negligence on the part of the plaintiff upon an inference that he must have done something to cause the movement in the three-roll stack which resulted in his injuries, because, it says, an inanimate object will not move of its own accord. A single roll of such carpeting, completely at rest on the floor surface involved herein, would not move without outside assistance, but that is not the situation involved herein. Three rolls of carpeting, stacked pyramid fashion, with each wrapped in slick paper, are involved.

The tests made by Mr. Akin were not shown to have been made under conditions similar to those existing at the time and

place of the plaintiff's injuries. If the testimony concerning those tests has any probative value in this case, it helps to establish, *as a fact*, that the plaintiff could not have done anything by himself, and did not do anything, to cause the movement in the three-roll stack of carpeting which resulted in his injuries.

■■■ We find no factual basis for an inference, and finding, that the plaintiff's injuries were, in whole or in part, the result of negligence on his part. Such an inference, and finding, would have to be based upon an inference that he did something to cause the movement in the three-roll stack of carpeting which resulted in his injuries and that, whatever he did, constituted negligence on his part. It is well established that an inference may be drawn from facts in evidence, but may not be based upon another inference. In the absence of proof of facts to support it, a plea of contributory negligence does not require submission of the question to the jury. See: Miller v. Price (1934), 168 Okl. 452, 33 P.2d 624. The trial court did not err in withholding the question of contributory negligence from the jury in this case.

The defendant's third, and final, proposition is that the trial court erred in refusing to give its requested instructions Nos. 1 and 3, and in giving instruction No. 5. All related to the issue of whether the plaintiff was an "invitee," or was a "trespasser," at the time and place of his injuries.

■■■ The court's instruction No. 5 defined the terms "invitee" and "trespasser" as used in the instructions, and pointed out that the necessary invitation to prevent a person's being a trespasser on another's premises could be express or implied. Its instructions Nos. 7 and 8 fully instructed the jury on the duty of a storekeeper toward an invitee and toward a trespasser, and concerning the jury's duty in connection with the issue. The matters set forth in the defendant's requested instructions Nos. 1 and 3 were covered thereby. The trial court did not err in refusing those requested instructions.

The defendant's objection to the court's instruction No. 5 involves only two paragraphs therein:

"Where a person is negligently misled, by the person in charge of the premises, into a reasonable belief that the premises, or a portion thereof, is open for his use, he is entitled to believe that he has an invitation to enter, even though the person in charge of the premises did not so intend it."

"The owner of a retail business establishment impliedly invites the public to enter the premises, but the invitation is limited to those areas where the public generally transacts business or those areas obviously open to the public."

■■■ The defendant's argument, as we understand it, is to the effect that the two statements are inconsistent and confusing, in that the first-quoted statement suggests that a negligent act on the part of the keeper of a retail business establishment may constitute an *implied* invitation to a person to enter a portion of the premises where the public generally does not transact business and which is not obviously open to the public. It also argues that the first-quoted statement suggests negligence on the part of Mr. Akin in connection with the plaintiff's returning to the storage room, without any evidence in the record of any such negligence on his part.

We do not construe the first-quoted statement as having any connection whatsoever with an implied invitation, but construe it as referring back to a previous statement, in the court's instruction No. 5, that "An express invitation is one where the person in charge of the premises, by word or act, actively indicates that a person may enter." Apparently, the jurors were not confused by the statement but construed it, as we do, as telling them that a person may be justified in believing that some act on the part of a storekeeper, although not intended to do so, indicated express permission to enter a portion of the premises where the public generally does not transact business or which is not ob-

viously open to the public. If, in this connection, the use of the expression "negligently misled" was erroneous and prejudicial, it was not prejudicial to, but favored, the defendant.

Judgment affirmed.

DAVISON, V. C. J., and IRWIN, HODGES, BARNES, and SIMMS, JJ., concur.